625 A.2d 692

**David Stephen SAWKO**

v.

**Lynne SAWKO, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 15, 1992.

Filed May 21, 1993.

David C. Martin, Jr., Pittsburgh, for appellant.

Robert L. Garber, Pittsburgh, for appellee.

Before TAMILIA, JOHNSON and HESTER, JJ.

TAMILIA, Judge.

Lynne Sawko takes this appeal from the August 1, 1990 Order denying her petition for custody modification, establishing a schedule of partial custody during November, 1990, and scheduling a hearing on November 21, 1990, establishing

custody and partial custody of the parties' minor child Stephen Ray Sawko, born March 31, 1986. The parties were married on October 5, 1985 and lived in Florida until October, 1987, when mother left father and returned with· Stephen to her family home in Allegheny County. Father remained in Florida and continues to reside there with his mother. In this appeal, mother presents two issues for our review:

1. Did the trial court abuse its discretion in declining to modify the existing custody Order in favor of mother following an automobile accident in which father, appellee David Sawko, was injured and the child had been a passenger in the vehicle?

2. Did the trial court err in failing to presume culpability for civil purposes after father invoked his fifth amendment right not to incriminate himself concerning whether he had been drinking or had possession of alcohol immediately prior to the accident?

Mother filed a petition for modification of custody on May 30, 1990, alleging, *inter alia*, that on May 20, 1990 in Florida, father "drank a sufficient amount of alcohol to become physically intoxicated and drove his truck while the minor child was a passenger in that truck. While he was driving that truck, [father] ran the truck into a telephone pole, causing injuries to [father]" severe enough that he was hospitalized for five days. Hearing was held on the petition on July 30, 1990, and the only witness called was father, who was examined as on cross-examination. On advice of counsel, father declined to answer certain questions surrounding the automobile accident, asserting his right·not to incriminate himself.

At the conclusion of the hearing, the trial court left primary custody of Stephen in father, but increased mother's partial custody rights and scheduled a six-month review hearing on the April 24, 1990 custody Order for November 21, 1990. Mother took a timely appeal from the Order of August 1, 1990. On November 19, 1990, the trial court continued generally the six-month review hearing on the basis that jurisdiction in the matter had been vested in this Court by virtue of mother's appeal.

454

■ As an initial matter, we note that our paramount concern and the "polestar of our analysis in this case, . . . and a legion of prior custody cases, [is] the best interests of the child . . . ." *Lee v. Fontine,* 406 Pa.Super. 487, 489–490, 594 A.2d 724, 726 (1991) (footnote omitted). The "best interests" standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being. *Id.* at 488, 594 A.2d at 725.

> On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Zummo v. Zummo,* 394 Pa.Super. 30, 54, 574 A.2d 1130, 1142 (1990) (citations omitted).

■ For this reason, it is of little moment to the Court that mother failed to raise before the trial court the second issue she now raises on appeal, that "an adverse inference should have been granted" that father had consumed alcohol, that alcohol was in father's automobile and that father was under the influence of alcohol at the time of the automobile accident. Ordinarily, this claim would be waived. Pa.R.A.P. 302(a); 2117(c). However, inasmuch as the custody Order and finding of the trial court, which ignored the adverse inference, could not be known to the mother until the Order was entered, waiver is not implicated. The mere mechanical constraint or procedural defect simply is not applicable. *See Andrews v. Andrews,* 411 Pa.Super. 286, 601 A.2d 352 (1991). The mother raised the issue the first time it became relevant, which was as an issue on appeal and as error on the part of the trial court. We cannot ignore the fact that contrary to most legal proceed-

ings, there are no post-trial motions in custody cases and appeals must be taken from the final court Order. Obviously, if post-trial motions had been possible, such a charge of error would have been relevant at that time and would have preserved the issue for appeal. This situation is clearly distinguishable from *Hill v. Hill,* 422 Pa.Super. 533, 619 A.2d 1086 (1993), where the court refused to permit counsel to question the child, without objection by counsel, and raised for the first time on appeal, or *Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1985), where the Supreme Court reprimanded this Court for *sua sponte* raising issues not raised in the trial court, reaffirming the doctrine of waiver as applicable to custody cases. Waiver most certainly applies in situations where an objection is in order and not properly made. It does not apply, as here, where an inference could be derived by action or nonaction of one of the parties, and the trial court, in its findings and Order, failed or refused to draw it. The latter may be charged as error on appeal whether or not counsel specifically requested such a finding during trial.

Turning to the central issue in this appeal, we must determine whether the trial court abused its discretion in declining to modify the existing custody Order in favor of mother as a result of matters alleged in her petition for modification. The Crimes Code states: "A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits a misdemeanor of the first degree if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304. This section is to be given meaning by reference to the common sense of the community and the broad protective purposes for which the section was enacted. *Commonwealth v. Taylor,* 324 Pa.Super. 420, 471 A.2d 1228 (1984). Pursuant to 23 Pa.C.S. § 5303(b), **Consideration of criminal conviction,** where a parent who has pled guilty or no contest to a number of offenses, including 18 Pa.C.S. § 4304, the court is required to determine that the parent does not pose a threat of harm to the child before making an Order of custody, partial custody or visitation to that parent.

In this case, father testified at the July 30, 1990 hearing that he had paid a fine of $52.00 in Florida in connection with the automobile accident on a charge of careless driving. (N.T., 7/30/90, p. 12.) Fla.Stat.Ann. § 316.1925 (West 1990). Father was not charged with driving under the influence, Fla.Stat.Ann. § 316.193, or with possession of open containers of alcoholic beverages, Fla.Stat.Ann. § 316.1936. As a result, father invoked his fifth amendment right against self-incrimination.

The United States Supreme Court recently held:

[T]he Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charges in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.... The critical inquiry is what conduct the state will prove, not the evidence the state will use to prove that conduct.

*Grady v. Corbin*, 495 U.S. 508, 521, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548, 564 (1990). Careless driving, however, is not a lesser included offense of the more serious charge of driving while intoxicated. *Massey v. City of Gainesville*, 296 So.2d 64 (Fla.Dist.Ct.App.1974). Therefore, father was not immunized from further prosecution and his fifth amendment claim was a valid one.

 We include this discussion not because of our interest in any charges which were filed against father or may have been filed subsequently, but to state facts which we find should have compelled the trial court to further inquiry. This Court cannot conceive the trial court not pursuing father's behavior further if it involved sexual abuse or assaultive behavior involving the child. A single act may trigger a review of a custody Order and may be sufficient to modify or reverse the original custody Order where it is so threatening to the child's physical, psychological or moral well-being as to be required in the best interest of the child. No case law beyond the law of common sense need be cited for this proposition. While father refused to testify as to drinking or having alcohol in his vehicle, there was a stipulation that at the

time of the collision there was alcohol in his system and a beer can and one one-ounce container of alcohol in the vehicle (N.T., pp. 14–15). Nevertheless, the trial court would not pursue father's fitness to retain custody of Stephen.

■ Moreover, we do not find father's invocation of his fifth amendment privilege acted as a bar to further exploration of this issue. While a defendant in a civil case may invoke the privilege of the fifth amendment against self-incrimination, and invocation of the privilege may not be used against him in any way in a subsequent criminal prosecution, the trial court in a civil case may draw any adverse inference which is reasonable from the assertion of the privilege. *Crozer–Chester Medical Center v. May,* 366 Pa.Super. 265, 531 A.2d 2 (1987); *U.S. Steel and Carnegie Pension Fund v. Decatur,* 364 Pa.Super. 294, 528 A.2d 165 (1987). The analogy to this custody case is inescapable.

■ The fact that the father, at the custody hearing leading to the Order of April 24, 1990 awarding him custody, testified *he had not used alcohol or drugs since October 14, 1987,* yet on May 20, 1990, five days after gaining physical custody, was involved in the single car accident with alcohol in his blood, *alone requires a complete reevaluation of the father's lifestyle* and his ability to safely parent the child. Inescapably, the failure of the court to find some adverse inference from the stipulation and facts surrounding the father's drinking, coupled with a motor vehicle accident, was a failure of the trial court to provide the full and comprehensive hearing required by the law in custody cases.

It appears that at the subsequent hearing to modify the custody Order, the trial court, five months later in August, 1990, relied on the evidence of the April, 1990, custody hearing which was weighed heavily in favor of the father due to psychological and sociological reports. The court ignored the father's subsequent conduct, despite the life-threatening consequences of that behavior. The least the court should have derived from this behavior was the questionable reliability of the father's testimony concerning his drinking habits and the

belief that the father's involvement in Narcotics Anonymous assured his abjuration of drugs and alcohol.

This single incident was sufficient to shift the scales as to parental fitness in favor of the mother and to require the father to come forward with evidence of his fitness to overcome the serious lapse demonstrated by his crash, while involved with alcohol, with the child in the car. The test as to best interest when two parents are involved is evaluated on a scale that is initially weighed equally as to each parent, and when that scale is tipped in favor of one of the parents, the other must come forward with evidence to reverse the balance. *In the Interest of Coast*, 385 Pa.Super. 450, 561 A.2d 762 (1989).

Much seems to be made of the more desirable environment in Port Orange, Florida, as compared to Duquesne, Pennsylvania. While this might be true, the possibility of becoming an inhabitant of a cemetery in Port Orange carries little preferment over being alive in Duquesne.

It is disturbing that the record in this case, for whatever reason, only reached this Court in April, 1992, and the review hearing of November, 1990, was never held because an appeal had been taken. That review hearing could have been conducted if a motion to quash had been timely presented because the Order of August, 1990, was, in effect, interlocutory. Custody cases are badly served by such unwarranted delays. The resolution left to this Court is, in effect, a non-resolution since time alone (more than two and one-half years) renders the appeal of August, 1990, moot and the relief requested by appellant (change of custody to mother) impractical. We, therefore, remand this case for a full hearing as to the present circumstances and require appellee father to testify concerning his use of alcohol/drugs from the time of the accident up to the present. Time has eliminated any likelihood that he can be further prosecuted for his actions in May, 1990, since the statute of limitations is two years. Fla.Stat.Ann. § 775.-15(2)(c).

We wish to reiterate that in determining child custody, the trial court may inquire into the best interests of the child irrespective of whether a substantial change in circumstances has been demonstrated. *Altus–Baumhor v. Baumhor*, 407 Pa.Super. 276, 595 A.2d 1147 (1991). This inquiry should have overridden father's invocation of this fifth amendment privilege. It was in Stephen Sawko's best interest to conduct a new hearing after father's dangerous conduct came to light.

Case remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.

Dissenting Opinion by JOHNSON, J.

JOHNSON, Judge, dissenting:

I agree with my distinguished colleagues that the order of August 1, 1990, from which Lynne Sawko (Mother) attempts to appeal is interlocutory. Clearly, the appeal should be dismissed. The majority declares, however, that established principles of waiver must be swept aside as "mere mechanical constraints or procedural defects" in order to force the trial court to hold still another hearing and to "require appellee father to testify." Since I am unaware of any authority to support either of these propositions, and since my colleagues have not provided any, I must dissent.

It is incumbent upon this Court to determine whether an appeal is properly before it. *Parker v. MacDonald*, 344 Pa.Super. 552, 557, 496 A.2d 1244, 1247 (1985). The current posture of this case leads me to conclude that this appeal is interlocutory and should be dismissed. The very able trial judge, the Honorable Max Baer, presided over a full, two-day custody hearing on April 18 and 19, 1990, involving fifteen witnesses. The complaint was brought originally by David Sawko (Father) to secure custody of the parties' son, Stephen Ray Sawko (Child), then age 3.

On April 20, 1990, Judge Baer entered extensive findings of fact and conclusions of law on the record in open court. Transcript of Custody Hearing, April 20, 1990, pages 689–714,

Transcript of Findings of Fact and Conclusions of Law, April 20, 1990, pages 2–26. The findings and conclusions supported a typed and filed Order of Court dated April 24, 1990, granting Father legal and physical custody, and granting Mother liberal partial custody. No appeal was taken from that Order.

Less than five weeks later, Mother presented a Petition for Modification alleging that an intoxicated Father had been involved in an automobile accident in Florida while Child was a passenger in Father's vehicle. A scheduled hearing followed, at which Mother was not prevented from introducing whatever evidence might support a change in the recent custody order. On August 1, 1990, Judge Baer denied relief on the Petition for Modification but did schedule an additional review hearing for November 21, 1990. Rather than awaiting this scheduled hearing, Mother took an appeal from the August 1, 1990, order of court.

In *Parker v. MacDonald, supra,* the challenged order disposed of the parties' rights to custody during a period between November, 1984 and July, 1985 and thereafter, unless and until a petition for re-examination of custody would be filed by one of the parties. 344 Pa.Super. at 558, 496 A.2d at 1247. We there concluded that the order had sufficient aspects of finality to be appealable. *Id.* In the case presently before us, no appeal was taken from the custody order entered on April 24, 1990, and a six-month review was already scheduled prior to the attempted appeal from the August 1, 1990 order. That latter order did nothing more than deny modification of the existing order entered less than five weeks before. On these facts, I would conclude that the appeal is interlocutory and should be dismissed. *Edmonds v. Western Pennsylvania Radiology Association,* 414 Pa.Super. 567, 607 A.2d 1083 (1992); *Williams v. Thornton,* 395 Pa.Super. 276, 577 A.2d 215 (1990). The order denying modification does not put Mother out of court and is, therefore, not final. *Ratz v. Ratz,* 359 Pa.Super. 8, 10, 518 A.2d 317, 318 (1986) (order denying mother's motion to dismiss for lack of subject matter jurisdiction father's petition for custody not a "final order" for appeal purposes).

To the extent that my colleagues agree that this appeal is interlocutory, *supra* at 458–59, I readily join with them. I can also agree that the delay in this case is "disturbing". Mother can share the blame for this delay in that her counsel failed to order the complete transcripts at the time the appeal was taken in 1990. *See* Pa.R.A.P. 1911(a). Although Mother did finally order and pay for the necessary transcripts sometime subsequent to our order of May 31, 1991, the trial court was not notified that the transcripts had been filed until late March 1992, when Judge Baer discovered their filing while dealing with unrelated matters. Counsel for both parties agreed to the cancellation of the scheduled November 21, 1990, hearing in a telephone conference with Judge Baer. Supplemental Opinion, Baer, J., April 16, 1992, page 3. Finally, this Court can share the blame inasmuch as the appeal was argued on October 15, 1992, and has been with this panel since that date.

Although an interlocutory appeal should be dismissed without more, my colleagues have addressed the contentions raised on appeal. Even if the appeal were properly before this Court, the result should not change. Mother is not entitled to any relief beyond that already granted by Judge Baer.

Neither of the two issues which Mother brings before us on appeal warrants the relief my colleagues would grant. The first issue, as set forth by Mother, is:

1. Did Judge Baer abuse his discretion in declining to modify the existing custody order in favor of Mother, following a one-car automobile accident in which David Stephen Sawko, Father, was injured and Child had been a passenger in the vehicle?

The majority has not addressed this first issue directly. I have found no abuse of discretion by Judge Baer in declining to modify the existing custody order on the skimpy evidence presented by Mother. In cases of existing custody orders, the party seeking to modify that award must meet the burden of proving a substantial change of circumstances which would justify the change. *Parker v. MacDonald, supra,* 344 Pa.Super. at 559, 496 A.2d at 1247. Clearly, the testimony of

Father admitting that he was injured in an automobile accident where empty containers of alcohol were found, without any evidence on the record of injury or adverse impact upon Child, is insufficient to support a change in custody. The majority seems to accept this conclusion. Thus, we are in agreement that the first issue raised by Mother is without merit, since the party charged with the responsibility of establishing a basis for change of custody has failed to meet that burden.

The Petition for Modification of Custody alleged that on May 20, 1990, Father:

> drank a sufficient amount of alcohol to become physically intoxicated and drove his truck while the minor child was a passenger in that truck. While he was driving that truck, [Father] ran the truck into a telephone pole, causing injuries to [Father] severe enough that [Father] has had to be hospitalized from May 20th for an expected week and a half.

Petition for Modification of Order of Court, filed May 30, 1990, ¶ 3, pp. 1–2. At the hearing held on the Petition, on July 30, 1990, the only witness called by Mother to support her Petition was Father, who was examined as and for cross-examination. On advice of counsel, Father declined to answer certain questions surrounding the vehicle accident, relying upon his right not to incriminate himself. Mother offered no further testimony or evidence on the issue. More importantly, Mother offered no testimony whatsoever concerning any impact, adverse or otherwise, that the incident may have had on the child.

At the conclusion of the hearing, Judge Baer declined to modify the custody order, which had been entered three months before, in the manner that Mother had requested. While leaving primary custody with Father, the hearing court did increase the liberal partial custody rights of Mother and scheduled a six-month review hearing on the earlier custody order for November 21, 1990. Mother took an appeal from the order entered August 1, 1990. That appeal prompted Judge Baer, following telephonic conference with counsel for both parties, to enter an order continuing, generally, the six-

month review on the basis that jurisdiction had been vested in this Court by virtue of the appeal. Order, Baer, J., November 19, 1990, filed November 20, 1990.

As Judge Baer has succinctly asserted in his Rule 1925 Opinion:

> The gravamen of Mother's Petition for Modification is that Father's automobile accident with Child present and while Father was allegedly intoxicated requires that this Court reverse its decision made after a full two day hearing, and award Mother custody.

Supplemental Opinion, Baer, J., April 16, 1992, page 4.

It is clear that in matters of custody and visitation, the ultimate consideration of the court is a determination of what is in the best interests of the child. Such a determination, made on a case-by-case basis, must be premised upon consideration of "all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Lee v. Fontine*, 406 Pa.Super. 487, 488, 594 A.2d 724, 725 (1991), *citing Zummo v. Zummo*, 394 Pa.Super. 30, 574 A.2d 1130 (1990). In *Stolarick v. Novak*, 401 Pa.Super. 171, 584 A.2d 1034 (1991), we reiterated our scope of review as defined in *Mumma v. Mumma*, 380 Pa.Super. 18, 21, 550 A.2d 1341, 1343 (1988), as follows:

> In reviewing a custody order, we are not bound by findings of fact made by the trial court which are unsupported in the record, nor are we bound by the court's inferences drawn from the facts. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 294–95, 368 A.2d 635, 637 (1977). However, on issues of credibility and weight of the evidence, we defer to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. *Id.* at 295, 368 A.2d at 637. Only where we find that the custody order is "manifestly unreasonable as shown by the evidence of record ..." will an appellate court interfere with the trial court's determination.

*See also Karis v. Karis*, 518 Pa. 601, 544 A.2d 1328 (1988); *Andrews v. Andrews*, 411 Pa.Super. 286, 601 A.2d 352 (1991).

On this appeal, we are looking at something more than a single, brief hearing at which Father testified as to events which occurred on one afternoon. As Judge Baer suggests in footnote 4 of his Supplemental Opinion, this Court must take into consideration all of the facts leading up to the trial court's initial order of April 24, 1990. The many factors underlying that decision, when placed in context, help to explain why the trial court declined to reverse the April 24th order on July 30th, but was prepared to undergo a timely, thorough six-month review the following November.

From our review of the many pleadings and depositions filed in this case, it seems clear that Judge Baer was faced with a serious, complex situation. Both parents had been involved in substance abuse during their marriage and had engaged in various counseling programs to deal with these problems. The trial court acted promptly to review the allegations advanced by Mother and to afford both parties their rights. No evidence was offered, nor was any alleged in the Petition for Modification, to suggest that the minor child who is the subject of this custody dispute was physically injured as a result of the vehicle accident. Mother has not offered any testimony as to the adverse impact upon the minor child as a result of this incident.

I would not say that one incident in which the child was not injured should result in a change of custody without any evidence as to the impact upon the child's best interest. Here, the record is devoid of any testimony subsequent to April 20, 1990, on this issue.

The original custody order of April 24, 1990, did not prompt an appeal. We have no reason to question the determination made, at that time, by the distinguished hearing court judge. Following my review of the record developed subsequent to that order, I conclude that Judge Baer did not abuse his discretion when he declined to reverse the earlier order but, instead, scheduled a six-month review hearing.

On the second issue, I wish to distance myself from my colleagues as far as jurisprudentially possible. Mother argues, in her second issue, that "an adverse inference should

have been granted" that Father had consumed alcohol, that alcohol was in Father's automobile, and that Father was under the influence of alcohol at the time of the collision. This issue is meritless.

Mother does not inform us, anywhere in her Brief, as to either the stage in the proceedings before the trial court where this issue was raised or the manner in which Mother raised this question. Pa.R.A.P. 2117(c). Mother never made any request, either formal or informal, for such an inference at any time during the hearing nor did Mother expressly request this specific finding of fact. To the extent that the failure to draw a specific inference was not brought to the trial court's attention at any time prior to the taking of the appeal, I would be constrained to find the issue waived. Pa.R.A.P. 302(a); *Hill v. Hill,* 422 Pa.Super. 533, 619 A.2d 1086, 1088 (1993).

My colleagues state that "inasmuch as the custody Order and finding of the trial court, which ignored the adverse inference, could not be known to the mother until the Order was entered, waiver is not implicated." *Supra* at 694. The majority goes on to state: "The mother raised the issue the first time it became relevant, which was as an issue on appeal and as error on the part of the trial court." *Id.* I am unaware of any existing case law to support either of these propositions and my colleagues have not set forth any precedent on the issue. A hearing court is neither obligated nor expected to draw inferences that are not advanced by the party seeking such inference to be drawn. The failure to produce evidence raises a permissible inference, not a mandatory inference or presumption. *Peugeot Motors of America, Inc. v. Stout,* 310 Pa.Super. 412, 420, 456 A.2d 1002, 1006 (1983); *Raffaele v. Andrews,* 197 Pa.Super. 368, 371, 178 A.2d 847, 849 (1962); Packel and Poulin, *Pennsylvania Evidence* (1987), § 419, page 249.

If Mother did not supply evidence sufficient to meet her burden of proof on the question of changed circumstances and adverse impact upon Child, any possible adverse inference created by Father's failure to testify as completely as Mother might have liked will not supply it for him. *Fitzpatrick v.*

*Philadelphia Newspapers, Inc.*, 389 Pa.Super. 438, 445, 567 A.2d 684, 688 (1989), *appeal denied*, 525 Pa. 618, 577 A.2d 890 (1990). Even if we assume that Mother was entitled to an adverse inference and that, as a result, Mother and her witnesses should be regarded as credible, we are still required to determine whether the evidence supplied by Mother constituted clear and convincing evidence that. Child had been materially and adversely affected by Father's conduct and the best interests of Child required a departure from the recently-entered custody order from which no appeal had been taken. *Id.* Moreover, given Mother's failure to come forward with any evidence whatsoever except the testimony of Father while on cross-examination, counsel for Father may well have been satisfied that Mother had not met her burden of proof in establishing grounds for change of custody and that, therefore, Father had no burden to meet. Under these circumstances, no presumption or inference could arise from Father's failure to either call witnesses or testify further. *Raffaele v. Andrews, supra,* 197 Pa.Super. at 371, 178 A.2d at 849.

My colleagues seemingly would require the trial judge to step down from his position as neutral arbiter and, simply on the basis that one of the parties has engaged in admittedly improper conduct, assume the role of advocate for purposes of proving Mother's case. I do not understand why it is Judge Baer's "fault" if the record in this case is absolutely devoid of any evidence concerning any impacts upon the child subsequent to the full and careful hearing conducted in April 1990. Well established principles of appellate review require an intermediate appellate court to refrain from advancing issues not properly developed by the parties on appeal. I decline to join such a facile effort to abolish the proper relationship between our conscientious, hard-working trial courts and this intermediate appellate court. *See Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1985).

Neither Mother nor my colleagues cite to any case law which would require, or strongly support, the result Mother seeks. This is so even assuming that the inference as to Father's inebriated state at the time of the accident were

drawn. One should not read Judge Baer's Supplemental Opinion, filed April 16, 1992, as rejecting the inferences which Mother would submit so much as it declines to follow her requested conclusions.

Without evidence of a harmful effect on the child, a parent's past conduct should have little weight in making a custody decision. *Michael T.L. v. Marilyn J.L.*, 363 Pa.Super. 42, 49, 525 A.2d 414, 418 (1987); *Bresnock v. Bresnock*, 346 Pa.Super. 563, 573, 500 A.2d 91, 96 (1985); *In re Custody of Pearce*, 310 Pa.Super. 254, 259, 456 A.2d 597, 600 (1983). *See* and *compare Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 140–141, 360 A.2d 587, 589–90 (1976) *with In re Wesley J.K.*, 299 Pa.Super. 504, 509 n. 4, 445 A.2d 1243, 1245 n. 4 (1982). Changes that do not have an impact on the child are irrelevant. *Snarski v. Krincek*, 372 Pa.Super. 58, 69–70, 538 A.2d 1348, 1354 (1988).

In the case now before us, Mother sought to secure a modification of custody relying solely on testimony from the mouth of Father. The record of the July 30, 1990, conciliation hearing contains no evidence whatsoever as to the effect, if any, that Father's drinking had upon Child. The majority on this appeal does not even attempt to posit actual harmful effect on Child but instead insists that Father's limited testimony:

> ... was sufficient to shift the scales as to parental fitness in favor of mother and to require the father to come forward with evidence of his fitness to overcome the serious lapse demonstrated by his crash, while involved with alcohol, with the child in the car.

Majority opinion, page 458.

My colleagues make no mention of the Findings of Fact entered on the record by Judge Baer on April 20, 1990, in support of the custody order of April 24, 1990, from which no appeal was taken. With respect to the fitness of Mother, Judge Baer found the following:

> As to the mother, I found that she is more laid back, more relaxed which is not necessarily bad but in this context has caused her to not be sufficiently focused upon her life and

her children's life and in comparison with the father makes it clear to me that her home is not as well suited for this child.

The mother was abused by her boyfriend George Savinda, this necessitating x-rays to her nose while George Savinda was staying with her and the children. Mother stabbed George Savinda during a major argument.

Tom Shipley, mother's current boyfriend, has been forced to file or has chosen to file criminal harassment charges of some sort against George Savinda.

Mother was found liable on a bad check charge brought by one of her landlords.

Generally, and I will continue to specify in the sense of work and home, since the split of mother and father in 1987, mother's life has been unstable, somewhat chaotic, and the Court finds that the excuses and the justifications are simply not convincing.

Mother has stayed nights at her boyfriend's home, Tom Shipley, with the children sleeping on the couch. Mother's testimony is they could have slept in a bed. This Court does not believe that it is appropriate for a six and three-year-old to sleep over at a boyfriend's house with the mother.

Mother's work moves, unlike father's, have been forced. She was fired from K–Mart. It was certainly unplanned. It was unscheduled. She has gone to work for Laidlaw, and I hope she does well with them, has had one report of improper or of warning because of three tardies in a year and a half.

The same is true of mother's moves as contrasted to father's moves. They have been reactive. She has not controlled them, and they have been part of her difficulties in this case. She moved from 22 South Sixth Street because, according to her testimony, the landlord asked for money once a month rather than twice a month, and she could not have cash for it. I found that excuse to be unsatisfactory and incredible. It is the same amount of

money. With any kind of planning and support, mother should not have been forced to make that move.

Four months later, mother moved from 222 West Grant Street because it was a poor environment for the kids. The evaluator had said so, and she recognized it. Between five and ten months later, mother moved from Turtle Creek to her mother's house.

The discrepancies between when she actually moved and when she gave her lease up because Turtle Creek was too expensive, surely she knew five months before that it would be too expensive or should have known.

Mother's moving into her mother's house was very recent before this hearing. Depending upon when she actually moved, some time between October of 1989 and February of 1990. The timing leaves some doubt as to the sincerity of the move, whether or not it was for the children or for the mother or to prepare for the court hearing.

Both mother and maternal grandmother testified that when mother's finances got better, she would move again. Maternal grandmother discussed it, and while mother was free to stay, there was no evidence on this record that mother would stay. There is no evidence on this record that convinces this Court based upon everything that it has heard and seen that when mother moves again that this cycle of job difficulty and moves it not going to begin again. The Court finds this very detrimental to the children.

Despite mother's difficult financial circumstances which this Court empathizes and sympathizes with, the maternal grandmother and grandfather charge her $250 in rent. This does not evidence the kind of support this Court would like to see from the grandparents and is specifically contrasted with the support the paternal grandmother has given. This is not meant of [sic] criticism of the maternal grandmother. These are the facts.

Despite mother's problem with a bad check and a suit before the District Justice, the maternal grandmother's testimony was that was mother's problem. She would not get involved.

Again, I have the same comment in the sense of the maternal grandmother's commitment to helping. The maternal grandmother's testimony was that they had a very large family in Pittsburgh, most of it centered in the Mon Valley where mother has lived and where maternal grandmother has lived their whole life, yet the evidence is absolutely bare that the mother's family has done anything whatsoever to help this mother and to support the mother.

So, in short, in comparing the family units, the Court finds that the father's family unit has been more willing, more able to provide the kind of stability necessary or in the best interest of the child.

With all of that in mind, the Court makes the following conclusions of law. Some of what I have said are conclusions of law. I recognize some of these are findings of fact. Those are somewhat intermingled in these kinds of cases, particularly when an opinion is delivered from the bench.

The Court did not find all of mother's testimony to be credible or believable. The Court did find all of father's testimony to be credible and believable.

The Court finds that the mother and maternal grandmother both find the maternal grandmother's residence to be temporary, without a cut-off date, but nevertheless with the contemplation that when finances improve, mother will move again. The Court finds that when mother moves again, based upon all the evidence before this Court and the review of the credibility of the people, that the precipitant instability which has been the problem will continue to be the problem, and this is not in the children's best interest.

The Court finds that mother's history as recited herein regarding her work is also similar to her home moves, and there was no evidence that mother has taken steps to improve her financial situation, that she will stay with this job, and if she does that the job will be anything more than part time, that it will provide her with sufficient funds to get housing, to be stable, to have the kind of continuous living conditions, arrangements that are necessary and appropriate for the raising of this child.

The Court also finds that mother's instability is not by design but is the result of this unstable and chaotic living situation and work situation which has plagued her at least since October of 1987.

The Court finds that the evidence of the support that will be provided by the paternal grandmother is far superior to the support that the maternal grandmother is willing to provide and that this is an important factor in comparing the overall situations.

Although not a particularly important factor and not the focus of the inquiry, this Court finds that the Port Orange area and its attendant facilities are somewhat superior to that available in Duquesne, Pennsylvania.

In short, the Court is going to enter an order that custody in this case be awarded to the father with partial custody to the mother.

Transcript of Custody Hearing, April 18, 19, 20, 1990, pages 697–706; Transcript of Findings of Fact and Conclusions of Law, April 20, 1990, pages 9–18.

From these findings and conclusions, the inference is reasonable that Judge Baer was not free to treat the prayer for relief brought by Mother less than five weeks later in a vacuum, as my colleagues seemingly suggest. The majority criticizes Judge Baer for "not pursuing father's behavior further" and not engaging in "further inquiry." Neither of these criticisms are found in Mother's Brief, perhaps because there is no law to support them.

I cannot accept the rather novel assertion of my colleagues—unsupported by citation to any authority—that the single incident of the car accident "was sufficient to shift the scales as to the parental fitness in favor of the mother and to require father to come forward with evidence of his fitness." *Supra* at 695. This simply is not the law as I understand it. Even if a substantial change were demonstrated, both parents share equally the burden of establishing with which parent the child's interests would best be served. *Parker v. MacDonald, supra,* 344 Pa.Super. at 559, 496 A.2d at 1247.

Judge Baer had found as fact that Mother's home was not as well suited as Father's for the child. Mother's life was unstable, somewhat chaotic and the excuses submitted by Mother were not convincing. Judge Baer found a lack of sincerity in Mother's move into her mother's house just prior to the April 1990, hearing and found that the cycle of job difficulty and moves very detrimental to the children, including Child here involved. Judge Baer found Father's family unit "more willing, more able to provide the kind of stability necessary or in the best interest of the child." Judge Baer concluded that the support that would be provided by the paternal grandmother is "far superior" to the support that the maternal grandmother is willing to provide and that this is an important factor in comparing the overall situation. *See* Transcript of Custody Hearing, April 18, 19, 20, 1990, pages 697–706; Transcript of Findings of Fact and Conclusions of Law, April 20, 1990, pages 9–18, *supra.*

These facts and conclusions led to Judge Baer's unappealed custody order of April 24, 1990. The trial court did not abuse its discretion when, barely three months later, it declined to modify the recently entered child custody order in the face of an upcoming six-month review. My colleagues admit that their decision is, in effect, a "non-resolution". Yet they would find error in the trial court for not shouldering Mother's burden to put forth her case and come forward with whatever evidence Mother believed would warrant a modification of custody. In suggesting that either this court, or the trial court, can "require appellee father to testify", the majority raises constitutional issues that are neither appropriate nor necessary for the proper resolution of this appeal.

The order from which the appeal was taken denied a change in custody. My colleagues, by remanding without reversing that order, impliedly concede that Judge Baer did not abuse his discretion when he denied Mother relief on her skimpy evidence. Of course, had Mother presented sufficient evidence to warrant a change of custody, no further trial court hearing proceedings would be necessary.

I believe that this appeal should be summarily dismissed as being brought from an interlocutory order not appealable as of right. Pa.R.A.P. 311, 341. The chief contention raised by Mother on this appeal was never presented to the trial court and is therefore waived. Nothing advanced by Mother at time of argument or in her Brief warrants relief. Were this appeal not dismissed, I would conclude that Judge Baer properly followed both law and procedure and that the August 1, 1990 order should be affirmed. Hence, this dissent.