**Davis v. Shawley**

C.P. of Centre County, no. 2004-2382.

*Bernard F. Cantorna,* for plaintiff.
*Carl Mollica,* for defendant.

GRINE, *J.,* May 25, 2005—Before this court is a complaint for custody brought by plaintiff Douglas J. Davis (Father) in which he seeks primary physical custody of Brittany Shawley (the child). Currently, defendant Crystal L. Shawley (Mother) and Father have been sharing custody of the child. A hearing was held in this matter over the course of two days—March 22 and March 29, 2005—during which this court heard testimony from both Father and Mother, as well as the child's paternal grandmother and paternal aunt. This court also heard testimony from several members of Mother's family. At the conclusion of the hearing, this court ordered counsel for Father and Mother to submit suggested findings of fact, conclusions of law, and memorandums of law. Counsel for both parents filed their suggested findings, conclu-

sions, and memorandums in a timely manner, and this court has reviewed them. Based on the testimony elicited at the hearing and the written arguments presented by counsel, this court determines that it is in the best interest of the child to grant Father's petition for primary physical custody.

## PRELIMINARY DISCUSSION

The child was born on November 27, 1995. From birth until approximately the age of two years, the child resided with both of her parents. Mother and Father's relationship floundered when Father was sentenced to a period of incarceration on drug charges. Mother and Father have been separated ever since. Mother was relatively young when the child was born and relied on the assistance of family members, especially following Father's incarceration. Father's mother and sister were Mother's primary source of assistance during the child's early years.

After the relationship between Mother and Father ended, Mother went to live with her parents. From that point in time until the time when the child was in her first-grade year, it is unclear exactly what custody arrangement existed between Mother, Father, and the members of Father's family. Mother testified that her child was primarily with her, but Father and paternal grandmother testified that, up until first grade, the child resided primarily with their family. School records indicate that the child was enrolled in "headstart" in the Bellefonte Area School District, and all parties agree the child was enrolled in "headstart" by Father and his mother. The child also attended kindergarten at the

Bellefonte Area School District. Mother's family resided in a nearby community located in the Bald Eagle Area School District. As the child was considered eligible to attend the Bellefonte Area School District, it appears to this court that the child's primary residence was with Father and his family.

The child began attending first grade in the Bellefonte District, but she ended the school year at the Bald Eagle Area School District. According to Mother, she enrolled the child in the Bald Eagle School District following a weekend visit with the child. Both Mother and paternal grandmother testified that the subject of the child's switching schools was discussed. Paternal grandmother testified that, while she was agreeable to the child's switching schools in order to be with her mother, she suggested to Mother that she wait until the end of the academic year before making the change. Mother testified that she did not wish to wait and saw no reason why the child could not be transferred immediately. She, therefore, decided not to return the child to paternal grandmother's home following a weekend visit and, instead, enrolled her in the Bald Eagle Area School District the following Monday. Father's family later relocated to the Bald Eagle Area School District in order to be closer to the child and remain a part of her life.

Mother is currently engaged to Barry Hall (fiancé).

While the child was in kindergarten in Bellefonte, Mother moved in with fiancé. The couple have another child, Kaitlyn, who is the child's half-sister. The family resides in a trailer located on the fiancé's family farm. During periods of time when Mother has physical custody of the child, the child resides with the family in that

residence. Testimony indicates that the child and her half-sister have developed a close bond as sisters.

This custody action was originally filed on May 27, 2004, by Father. Father stated in his complaint for custody that he had concerns for the safety and care of the child. Prior to Father's filing for primary physical custody, the child suffered a first-degree sunburn while in her Mother's care due to the child's not wearing sunblock. A series of conferences were held culminating in an order of court dated July 16, 2004, which outlined periods of partial physical custody to be exercised by both parents with Father having custody of the child Mondays and weekends and Mother having custody each Tuesday through Friday. This custody arrangement was generally practiced by the parties until the time of the present court hearing.

## DISCUSSION

As in any custody matter, this court must look at what is in the best interest of the child and decide the matter solely on that interest. What constitutes "best interest" is a fact-specific, case-by-case analysis of "all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Sawko v. Sawko,* 425 Pa. Super. 450, 454, 625 A.2d 692, 693 (1993), citing *Lee v. Fontine,* 406 Pa. Super. 487, 594 A.2d 724 (1991).

All parties agree that the present custody arrangement is not working. Testimony indicated that Father and fiancé do not get along, and the tension between them has been the source of a number of arguments between the parents concerning the child. It was also apparent in the tes-

timony provided by the parties that Mother and Father do not always get along, and have engaged in more than a few arguments concerning the child. Testimony by the paternal grandmother also provided evidence that the custody situation is negatively impacting the child. According to the paternal grandmother, beginning in January 2005, the child began complaining of stomachaches when the time would come for her to return to Mother's home following a visit to Father's home. The child's physician suggested to paternal grandmother that the child could benefit from counseling, and the child has since been enrolled in counseling. Additionally, Mother provided testimony that the child is aware of the current "battle" being waged over her as she has asked her mother following court proceedings, "Who won me?"

In custody cases involving two parents, where neither has been alleged to be unfit, "[t]he test as to best interest . . . is evaluated on a scale that is initially weighed equally as to each parent, and when that scale is tipped in favor of one of the parents, the other must come forward with evidence to reverse the balance." *Id.* at 458, 625 A.2d at 695, citing *In the Interest of Coast,* 385 Pa. Super. 450, 561 A.2d 762 (1989). Before this court, therefore, Father and Mother are viewed as equally suitable to be the primary custodian of the child. This court must then look to which environment provided by each parent would serve the best interests of the child.

Though initially viewed as even, the "custody scale" is tipped in favor of Father for several reasons. Father resides with his mother and sister. Both of these women have been long-standing, positive influences in this child's life. Paternal grandmother and aunt have taken

the child to doctor's appointments throughout her early years to the extent that some doctors mistook the child's aunt for her mother. The child's aunt continues to this day to be a resource for homework assistance when Mother is unable to assist the child. When the child began exhibiting symptoms of anxiety and stress over the present custody matter, it was the child's paternal grandmother who took the child to the doctor's office and arranged for the child to begin counseling to treat the problem. Grandmother and aunt have taken an active interest in this child's growth and development even going so far as to enroll the child in extracurricular activities including twirling, Girl Scouts/Brownies, and skating.

With the scale tipped in favor of Father, the burden is on Mother to produce evidence to reverse the balance. The child's half-sister resides with Mother and fiancé. Absent compelling reasons, it is the long-held policy of the courts of this Commonwealth that siblings should be raised together whenever possible. This policy is not diluted when the siblings concerned are only "half-siblings." *Wiskoski v. Wiskoski,* 427 Pa. Super. 531, 629 A.2d 996 (1993). However, the mere fact that the child would be residing in a home with her half-sister is itself not sufficient enough of a factor to re-balance or to tip the scales in favor of Mother. The presence of a sibling in Mother's home is just one factor that must be considered in conjunction with the remaining factors. *Id.*

This court has several concerns that lead to the conclusion that at this time Mother cannot tip the custody scale in her favor to warrant awarding primary physical custody of the child to her. Allegations were made at the hearing that Mother's fiancé is verbally and physically

abusive toward Mother. Though Mother denied the allegation waged by paternal grandmother that her fiancé grabbed her by the neck with force sufficient to leave a mark, Mother did admit that he did threaten to kill her "once." Additionally, Mother admitted that her fiancé has made disparaging remarks to the child, such as calling her "fat." Also, Mother admitted that the child and her half-sister have heard the couple use profanity as well as argue within earshot of the children. The absence of any testimony on the part of Mother's fiancé, as well as his decision not to appear in court for a matter that would significantly alter his domestic arrangements, does little to dispel this court's concern that granting primary physical custody to Mother might place this child in an abusive household. That potential is of concern to this court and can be used in the determination of what custody arrangement meets the child's best interest. See *Dile v. Dile,* 284 Pa. Super. 459, 426 A.2d 137 (1981).

This court also has valid concerns that, should primary custody be granted to Mother, the child's medical needs would not be met. The child has allergies to cats and smoke. Mother has two cats. Additionally, Mother and several members of Mother's family smoke in the presence of the child. Mother readily admitted that she smoked in the child's presence when they were in the car, but the child did not indicate to Mother that the smoke bothered her. Mother testified that the child's allergies were under control as she took medication and only occasionally got "plugged up." That Mother would intentionally expose the child to known allergens so long as the child had medication to combat the symptoms prompts concern that, if primary physical custody resided

with Mother, the child's medical needs might not be met. The custody scales are, therefore, still tipped in favor of Father. See *Tucker v. Tucker,* 41 D.&C.4th 56 (Lawrence Cty. 1998).

Also, as discussed *supra,* the present custody matter has resulted in the child exhibiting signs of stress and anxiety in the form of stomachaches. The child's physician recommended the child be enrolled in counseling. Mother made it clear at the hearing that she did not believe the child needed counseling and thought the idea of counseling for the child was "stupid." Despite the fact that Mother indicated that she would participate in counseling if it truly was necessary, this court is left with serious doubts as to whether the child would indeed receive medically-recommended treatment if Mother did not entirely agree such treatment was necessary. *Id.*

Because this court feels that at present the best interests of the child are served by granting Father's complaint for custody, this court still believes that Mother should enjoy ample time with the child. The fact that both parents live within a close proximity to each other should only help to facilitate frequent visits and periods of partial physical custody between Mother and the child. Mother indicated at the hearing that she voluntarily changed her work schedule in order to be available when the child was not in school. Mother related her suspicions that her time with the child was compromised by the presence of paternal grandmother and aunt. Specifically, Mother indicated that, during her periods of custody, the child would receive calls from paternal grandmother or that the child would call paternal grandmother and learn of an activity or event planned for the family.

The child would become so disappointed that she would be missing the activity or event that Mother felt compelled to forfeit her periods of custody in order to allow the child to spend time with Father and his family.

This court will not condone any acts of alienation on the part of any caregiver. This child is fortunate to have several people in her life that care for her and is entitled to spend time with each of them and not feel guilty or cheated at the thought of missing an activity or event with one or more of them. Though Mother relayed her suspicions to this court that she thought paternal grandmother and aunt were intentionally trying to compromise her time with the child, she could not substantiate her claims. This court does not believe that any overlapping of events or activities was deliberately orchestrated on the part of Father or his family to deny Mother time with the child. Instead, this court believes the overlapping events were due to disorganized scheduling, and trusts that, in the future, both sides of the family will make a better attempt to communicate and coordinate family events so as not to place the child in the awkward position of having to choose one side of her family over the other.

As Father's family appears best able to provide for the child's intellectual, emotional, physical, moral, and spiritual well-being, this court grants Father's complaint for custody and enters the following order.

## ORDER

And now, May 25, 2005, after a hearing on the matter and a review of the suggested findings of fact, conclu-

sions of law, and memorandums of law submitted by counsel, it is hereby ordered and decreed that Father's complaint for custody in which he seeks primary physical custody of the child Brittany Shawley is granted.

Mother shall have periods of partial physical custody of the child including alternating weekends from Friday at 4 p.m. to Sunday at 7 p.m. Mother shall also have periods of partial physical custody from after school until 7 p.m. at least two nights a week during the academic school year. The exact days of the week will be determined by the parents so as to best accommodate the child's academic and extracurricular activities.

Mother shall have physical custody of the child for five non-consecutive weeks during the summer months to be determined by the parents.

Mother shall also have a "right of first refusal" for baby-sitting purposes in the event Father or Father's family is unable to watch the child.

Furthermore, Mother shall have periods of partial physical custody at such other times as may be agreeable between the parties.

Parents shall take steps to ensure that the child is not deliberately exposed to known allergens and that all of the child's medical needs are addressed, including any psychological treatment and/or counseling that the child's physician determines to be appropriate.

Custody of the child for holidays shall be determined by the parents. In the event that parents cannot agree as to how to share time for the holidays, the holidays will be divided between the parents with Father having custody of the child until 1 p.m. on the day of the holiday

and Mother having custody of the child from 1 p.m. until 8 p.m. on the holiday. The holidays shall include Christmas, New Year's Day, Memorial Day, Independence Day, Labor Day and Thanksgiving. Father shall have custody of the child on Father's Day, and Mother shall have custody of the child on Mother's Day.