J-S35032-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| T.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.B. | : | No. 535 EDA 2020 |

Appeal from the Order Entered January 10, 2020
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  No. 0C1307950

BEFORE:   BOWES, J., STABILE, J., and COLINS, J.[*]

DISSENTING MEMORANDUM BY COLINS, J.:      **FILED OCTOBER 09, 2020**

I respectfully dissent, because I believe that the custody order entered January 10, 2020 ("Order"), was properly appealable as a final order. Primarily, I disagree with the majority as to the applicability of ***Cady v. Weber***, 464 A.2d 423 (Pa. Super. 1983), to the current action, as the procedural posture of that case clearly parallels that of the current appeal.

The language of the Order itself is crucial.  As the majority notes, the Order granted primary physical custody of P.L. ("Child") to Mother, partial physical custody of Child to Father, and shared legal custody of Child to Parents; it thereby changed the prior custody arrangement which had provided Mother with sole physical and legal custody of Child and had limited Father to supervised visitation at the Philadelphia Family Court Nursery.  The

---

[*] Retired Senior Judge assigned to the Superior Court.

Order further stated: "A home investigation is ordered on Father's residence. Once a home inspection demonstrates that the Father's home is adequate for [C]hild, he then may resume partial physical custody. After the home investigation is received, the court will send an order confirming Father's new custody schedule." Order, 1/10/2020, at 1-2. The Order made no mention of additional hearings but included an examination of the statutory custody factors at 23 Pa.C.S. § 5328(a).

Before reaching my analysis, I also wish to note that Mother's response to the Rule to Show Cause as to the finality of the Order did more than merely "assert[] the order was final." Majority Memorandum at 3-4. Mother's response of March 6, 2020, argued that the Order was final, because: (1) no further hearings were scheduled; and (2) the Order resolved the custody claims. Letter Brief of Mother in Response to the Order of March 4, 2020, 3/6/2020, at 4-5 (citing *Cady*, 464 A.2d at 426).

In *Cady*, the trial court entered a custody order but also "ordered additional studies to be compiled of the children during visits in the parties' respective homes. The judge directed that those reports be forwarded to him, upon their completion, for further consideration." 464 A.2d at 426. This Court concluded that the order in question was final, because it resolved the ultimate issue between the parties, namely whether custody should be transferred to the children's mother. In addition, this Court noted that the home studies were not designed to allow reconsideration of its determination but rather to implement that determination. *Id.*

As in *Cady*, the trial court in the current matter entered a custody order but ordered a home study that was to be forwarded to the trial court for further consideration. *Compare* Order, 1/10/2020, at 1-2, *with Cady*, 464 A.2d at 426. The Order resolved the ultimate issue between the parties, namely who should have physical custody of Child and when. *Compare* Order, 1/10/2020, at 1-2, *with Cady*, 464 A.2d at 426. Additionally, there is nothing in **the Order itself**[1] indicating that the home study was intended to allow reconsideration of the trial court's determination. Instead, the language that, upon the trial court's receipt of the home study, Father will be permitted to "resume partial custody" and "the court **will** send an order confirming Father's new custody schedule" indicates that the trial court did not intend to reconsider its holding, only to confirm the safety of implementing it. *Compare* Order, 1/10/2020, at 1-2, *with Cady*, 464 A.2d at 426.

Despite *Cady*'s age of more than three and a half decades, no subsequent conflicting case law exists, and *Cady* remains in line with more recent case law on the determining the finality of custody order. In *G.B. v. M.M.B.*, 670 A.2d 714 (Pa. Super. 1996) (*en banc*),[2] an *en banc* panel of this Court explained:

---

[1] As opposed to a letter by the trial court, outside the certified record submitted from the Court of Common Pleas and prompted by a Rule from this Court directed to Mother, not to the trial court.

[2] Although *G.B.* is almost a quarter-century old, the portions of it quoted below have been cited by more modern cases, including *J.P. v. J.S.*, 214 A.3d 1284,

[A] custody order will be considered final and appealable only after the trial court has completed its hearings on the merits and the resultant order resolves the pending custody claims between the parties. . . .

***Sawko v. Sawko***, 425 Pa.Super. 450, 625 A.2d 692 (1993), . . . involved an appeal from an order entered in response to a mother's petition to modify an order entered five weeks earlier which awarded primary custody to her child's father. The trial court conducted a hearing on the petition to modify at which both parties were permitted to put on as much evidence as they wished. At the conclusion of the hearing, the court entered an order which denied the petition to modify primary custody but increased the mother's partial custody rights and scheduled an additional review hearing about four months in the future. This court noted, without elaboration, that the order was interlocutory and that mother's appeal therefrom was premature and subject to quashal. ***Id.*** at 458, 625 A.2d at 696.

The reasons for this conclusion are clear. Although the court's order was entered after a full hearing, it clearly was *not* intended to constitute a complete resolution of the issues pending between the parties. . . . [T]he trial court's order did not completely resolve the issues raised by the parties unless and until further proceedings were initiated by a party. Rather, the ***Sawko*** court's order, although declining to grant the ultimate relief sought by the petitioner-mother, made an adjustment in its previously ordered custody arrangement and scheduled a further review of the matter. **By scheduling further review for a date certain rather than leaving it up to the parties to seek such review**, the trial court made it clear that the ultimate issues between the parties remained under consideration. The court's order was merely intended, in light of the brief time period between its initial custody order and the petition for modification, to allow the court more time to study the effects of the ordered arrangement upon the child and to make a final determination at a later date as to whether a modification of primary custody would be in the child's best interest.

***Id.*** at 715, 719–20 (italicized emphasis in original; bolded emphasis added).

1286–87 (Pa. Super. 2019), and ***Kassam v. Kassam***, 811 A.2d 1023, 1027–28 (Pa. Super. 2002).

In the current matter, the trial court made no mention of future hearings in the Order and scheduled no later hearings. Even if it had anticipated future hearings on Child's custody, as it alleged in its March 2020 correspondence, the trial court had already completed its hearing on the merits of Mother's motion to modify custody and was only waiting on the written report of the home investigation, Order, 1/10/2020, at 1-2, not on any additional evidence to be presented at a hearing. *See G.B.*, 670 A.2d at 715 ("completed its hearings on the merits"). The Order gives every indication that it was a final resolution as to the filing at issue and the evidence in support thereof and included an examination of the custody factors set forth in 23 Pa.C.S. § 5328(a) and a best-interest analysis. Order, 1/10/2020, at 2-3; *see G.B.*, 670 A.2d at 720. The trial court also addressed the custody factors enumerated in Section 5328(a) in its opinion. Trial Court Opinion, dated April 16, 2020, at 10-17.[3] For these reasons, I would conclude that the Order was final.

Furthermore, assuming the Order were not final for the reasons discussed above, I would observe that custody orders present unique

_____

[3] Specifically, the trial court found that the third, fourth, fifth, sixth, eighth, tenth, eleventh, fourteenth, and fifteenth custody factors applied equally to both Parents or were inapplicable. Trial Court Opinion, dated April 16, 2020, at 12-16. Consequently, its decision rested entirely upon the first, second, seventh, ninth, twelfth, and thirteenth custody factors. *Id.* at 10-15. The trial court found the ninth, twelfth, and thirteenth custody factors to be in Mother's favor, and she thus did not raise any appellate challenges relating to those factors. *Id.* at 14-15. In its opinion, under the heading for the sixteenth "catch-all" custody factor, the trial court discusses its credibility and weight determinations and does not address any additional evidence. *Id.* at 16.

procedural circumstances that have allowed this Court to review trial court orders modifying custody that are ostensibly temporary. *See E.B. v. D.B.*, 209 A.3d 451, 466 (Pa. Super. 2019).

> Of course, all custody awards are temporary insofar as they are subject to modification by an ensuing court order any time that it promotes the child's best interest. Thus, by force of circumstances, no award of child custody is permanent regardless of whether the order is styled as interim or final.

*Id.* at 462 n.13 (citation and internal quotation marks omitted). Additionally, "the slowness of the judicial machinery often turns an ostensibly temporary order into a de facto status quo[.]" *Id.* at 466 (citation and internal quotation marks omitted). In *J.M. v. K.W.*, 164 A.3d 1260, 1269 (Pa. Super. 2017) (*en banc*), this Court found that an "interim order was temporary in name only" where "[i]t carried the same force as final custody order[,]" even though there "still has not been a formal determination of the children's best interest that would qualify as a 'final' order." Analogously, even if the Order is an ostensibly temporary, the Order has created a new *status quo* for the custody arrangements and has the same force as a final order. *Id.*; *E.B.*, 209 A.3d at 466.

Accordingly, whether the Order is considered a final order or an ostensibly temporary order with the force of a final order, I would find that it to be instantly appealable and reviewable.[4] Consequently, I believe that this

_____

[4] In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings

Court can and should proceed to address Mother's substantive appellate issues

challenging the content of the Order itself and contending that the trial court

failed to consider, to weigh, and to state findings of the statutory custody

factors. Mother's Brief at 4-5, 15, 38 (citing 23 Pa.C.S. § 5328).[5] Hence,

I respectfully dissent.

_____

of the trial court that are **supported by competent evidence of record**, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, **we are not bound by the trial court's deductions or inferences** from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable **as shown by the evidence of record**.

**D.K. v. S.P.K.**, 102 A.3d 467, 478 (Pa. Super. 2014) (emphasis added) (quoting **J.R.M. v. J.E.A.**, 33 A.3d 647, 650 (Pa. Super. 2011)).

[5] We need only focus our analysis on the first, second, and seventh custody factors. 23 Pa.C.S. § 5328(a)(1)-(2), (7) ("Which party is more likely to encourage and permit frequent and continuing contact between the child and another party[,]" "[t]he present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child[,]" and "[t]he well-reasoned preference of the child, based on the child's maturity and judgment[,]" respectively); **see also** Trial Court Opinion, dated April 16, 2020, at 10-11 (analysis of first custody factor (citing N.T. at 40-42)), 11-12 (analysis of second custody factor (citing N.T. at 48-50, 56-57)), 13-14 (analysis of seventh custody factor)

Pursuant to my review of the record, I am deeply troubled by a disconnect between the evidence of record and the trial court's conclusions. For example, the trial court's statement that "Mother did fail to bring the child to the Philadelphia Court Nursery as ordered" is unfounded. Trial Court Opinion, dated April 16, 2020, at 10 (citing N.T. at 40-42). The record demonstrates

_____

that Mother only failed to bring Child to two supervised visitations:  August 4, 2020, which she explained was due to her fear of Father; and September 22, 2020, due to her employer unexpectedly requiring her to work a double shift. N.T. at 40-43.  However, Mother brought Child to all of the visits for the month-and-a-half in between.  *Id.* at 41-42.  Accordingly, if we were to reach the merits of this matter, I would hold that the findings of the trial court are not supported by competent evidence of record.  *D.K.*, 102 A.3d at 478.