**Darwin OTTOLINI, Appellant**

**v.**

**Melinda S. BARRETT, Appellee.**

Superior Court of Pennsylvania.

Submitted May 19, 2008.
Filed July 14, 2008.

George Stenhach, Coudersport, for appellant.

Jarett R. Smith and Donna M. Albright, Coudersport, for appellee.

BEFORE: BENDER, GANTMAN and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Father, Darwin Ottolini, appeals the June 4, 2007, Order granting mother, Melinda S. Barrett, primary custody over the couple's two minor children, Derek (DOB 12/17/1997) and Dalton (DOB 08/25/2001).

¶ 2 The record discloses the following. The parties were married on October 18, 1997. On April 8, 2003, father filed a complaint seeking a divorce from mother and exclusive occupancy of the marital home. Thereafter, on April 10, 2003, mother filed a "motion for emergency spe-

cial relief" [1] requesting the trial court award her primary custody of the children. That same day, father filed a cross-petition for special relief averring that mother had removed the children from the marital home and requesting that he be awarded primary custody. In her answer to the divorce complaint filed on April 16, 2003, mother raised a counterclaim for primary custody.

¶ 3 On April 22, 2003, the trial court issued an interim Order awarding mother physical custody of the children and granting father "such partial custody as Mother shall agree." Record, No. 14. Less than a month later, on May 16, 2003, the court issued a stipulated custody Order wherein the parties agreed to share legal and physical custody of the children. The parties were granted an uncontested divorce on November 20, 2003.

¶ 4 On December 29, 2003, mother filed a petition seeking modification of the stipulated custody Order entered on May 16, 2003, and on April 20, 2004, the trial court entered a modified Order making slight alterations to the stipulated Order. For over a year, there were no further developments in the case; on October 26, 2005, however, the trial court issued an Order providing, in relevant part: "Father having requested a modification of the existing Child Support Order and alleging a change in Mother's status, a review of both custody and child support is required." Record, No. 41. On December 6, 2005, mother filed a petition seeking modification of the April 20, 2004, Order and requesting primary custody of the children; later that day, the court held an in chambers hearing with the children but without the presence of a court reporter or counsel. (We note that in its December 6, 2005, Interim Order the trial court notes it scheduled the

---

1. *See generally,* Pa.R.C.P.1915.13, **Special Relief.**

hearing *sua sponte*, prior to mother filing her petition for modification. Record, No. 44.) On December 12, 2005, the trial court entered an Order appointing a guardian *ad litem* to represent the interests of the children. On April 21, 2006, the court held another hearing at which it considered testimony offered by expert witness Dr. Joseph McNamara, Ph.D., and on June 2, 2006, the court directed the children to submit to a psychological custody evaluation with Dr. John W. Addis, Ph.D.

¶ 5 A third hearing was held on July 28, 2006, and a fourth on November 1, 2006, at the conclusion of which the court authorized father to retain the services of a third expert, Dr. Gary Glass, Ph.D. The next day, November 2, 2006, an interim custody Order transferring primary physical custody of Dalton to mother, *inter alia,* was entered. A final custody hearing was conducted on May 17, 2007, at which time the court considered testimony from Dr. Glass, among others.

¶ 6 The Order subject of this appeal and father's timely notice of appeal therefrom were entered shortly thereafter. Father was instructed to file a Rule 1925(b) concise statement of matters complained of on appeal. He did so and thereafter, the trial court issued a Rule 1925(a) Opinion. *See generally,* Pa.R.A.P.1925, **Opinion in Support of Order**

¶ 7 Father raises the following assignments of error:

1. Did the court abuse its discretion in denying counsel, and thus [father], [the opportunity] to be present and an opportunity to participate in interviewing the two children in question; and further, not making the interview a part of the record so that counsel could be fully aware of what was exactly stated in the interview?

2. Did the court abuse its discretion in considering Dr. Addis' report even

though the report was not entered into evidence, nor was Dr. Addis called as a witness; and that [father] objected to Dr. Addis' report being admitted into evidence absent the opportunity to cross-examine Dr. Addis?

3. Did the court abuse its discretion by not preparing and filing findings of fact?

4. Did the court abuse its discretion by not giving proper weight to the evidence?

Appellant's brief at 7.

¶ 8 Our standard of review over a custody order is for a gross abuse of discretion. *A.J.B. v. M.P.B.,* 945 A.2d 744, 746–747 (Pa.Super.2008). If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused. *Bonawits v. Bonawits,* 907 A.2d 611, 614 (Pa.Super.2006). Our scope of review over custody disputes is broad; this Court is not bound by the deductions and inferences the trial court derives from its findings of fact, nor must we accept the trial court's findings of fact when these findings are not supported by competent evidence of record. *A.J.B., supra* at 746–747. Our paramount concern in child custody matters is the best interests of the children. *Id.* at 747.

¶ 9 As to father's first assignment of error, the trial court notes the following:

Father suggests we erred in interviewing the children on the two occasions mentioned without the presence of counsel, the parties, and/or the court reporter. While we recognize that by doing so, no record is created, we are absolutely convinced that our practice preserves the confidentiality of the children and protects them from recriminations which

befall them if their parents hear their comments to the Court or those comments are relayed by counsel.

Trial Court Opinion, Williamson, J., 8/13/07, at 4 n. 1.

¶ 10 We do not share the trial court's conviction, nor does our Supreme Court. While we appreciate the concerns which prompted the court to interview the children *in camera*, over father's objections and without either of the parties' attorneys or a court reporter present, our Supreme Court's mandate could not be clearer.

> (b) The court may interrogate a child, whether or not the subject of the action, in open court or in chambers. The interrogation *shall* be conducted in the presence of the attorneys and, if permitted by the court, the parties. The attorneys *shall* have the right to interrogate the child under the supervision of the court. The interrogation shall be part of the record.

Pa. R.C.P.1915.11(b), **Appointment of Attorney for Child. Interrogation of Child. Attendance of Child at Hearing or Conference** (emphasis added); *see also* Appellant's brief at 12, *citing Commonwealth ex. rel. Lee v. Lee*, 248 Pa.Super. 155, 374 A.2d 1365, 1369 (1977).

¶ 11 Mother contends we should disregard the plain language of Rule 1915.11(b) because father was not prejudiced by the court's *in camera* interrogation of the children. Appellee's brief at 7, *citing Sandra L.H. v. Joseph M.H.*, 298 Pa.Super. 409, 444 A.2d 1241 (1982). It is clear from the trial court's Opinion that it relied, at least in part, on the *in camera* interrogations of the children in rendering its decision. Trial Court Opinion at 4, 5. *Sandra L.H.*, cited by mother, has no legal or factual bearing on this controversy in that it was

handed down before the effective date of Rule 1915.11(b). Pa.R.C.P.1915.11, *Note*. To the extent that *Sandra L.H.* can be read as being inconsistent with Rule 1915.11, it is superseded. Furthermore, the *in camera* interrogation of the children in *Sandra L.H.* was conducted pursuant to an agreement between the parties, and the vast majority of this interrogation was transcribed for the record. *Id.* at 1244. These facts alone are sufficient to distinguish *Sandra L.H.* from this matter.

■ ¶ 12 While there is no question the trial court's Order must be vacated, we are compelled to address father's second assignment of error given the impending remand of this case. Father contends the trial court erred in relying on the opinions in Dr. Addis' expert report without ever admitting the report into evidence,[2] without ever calling Dr. Addis himself as a witness, and without subjecting Dr. Addis' opinions to cross-examination. Appellant's brief at 13, *citing K.L.H. v. G.D.H.*, 318 Pa.Super. 330, 464 A.2d 1368, 1373 (1983) ("In child custody proceedings, it is error to admit reports without affording the parties the opportunity to cross-examine the preparer as to its contents.").

¶ 13 Trial courts are authorized to order children subject of custody proceedings to submit to "an evaluation by an appropriate expert or experts" *sua sponte*. Pa.R.C.P. 1915.8(a), **Physical and Mental Examination of Persons.** Once the court appointed expert delivers a report to the trial court and the parties, Rule 1915.8(b) controls.

> (b) ... No reports shall be filed of record or considered evidence unless and until admitted by the court.... If the report or any information from the

---

2. The report, which was included with the record exhibits in a manila envelope, is stamped as being received in the judge's chambers on October 3, 2006; it was neither introduced into evidence nor made an official part of the certified record.

evaluator is provided to the court, the evaluator shall be subject to cross-examination by all counsel and any unrepresented party without regard to who obtains or pays for the evaluation.

¶ 14 Mother, who concedes the trial court did not admit Dr. Addis' report or allow the opinions therein to be subjected to cross-examination, argues the court's failures are of no moment because father "failed to procure Dr. Addis' presence." Appellee's brief at 9. She also argues "reversal is not *mandated* where the court considers an evaluation without having the benefit of the author's cross-examination." *Id.* at 10 (emphasis in original), *citing Commonwealth ex. rel. Michael R. v. Robert R.R.*, 314 Pa.Super. 335, 460 A.2d 1167, 1172 (1983), *reversed Commonwealth ex. rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984). Further, appellee argues, "[t]here is nothing to suggest that Dr. Addis' report factored into the ultimate custody order." Appellee's brief at 11. We disagree with all three arguments.

¶ 15 Father, who never requested that Dr. Addis conduct an evaluation, filed a motion on October 30, 2006, requesting, *inter alia,* permission to cross-examine Dr. Addis. Record, No. 61. During the November 1, 2006, hearing, the guardian *ad litem* asked the trial judge whether he wanted her to subpoena Dr. Addis. N.T., 11/1/06, at 74. In response and in the presence of father's counsel, the court stated:

> I'm not going to worry about Dr. Addis. When I get a date the court administrator will call Dr. Addis find out when he's available, when I'm available and that's when we'll have the hearing, and he'll be issued subpoena whether he gets money or not. If he doesn't show up he'll be in jail. Next problem.

*Id.* The following day, the court issued an interim custody Order responding, in part, to father's October 30, 2006, motion. The Order was silent as to father's request to cross-examine Dr. Addis. Record, No. 62.

¶ 16 In sum, the trial court ordered Dr. Addis' report *sua sponte* and, in doing so, accepted the responsibility for ensuring Dr. Addis was subject to cross-examination in accordance with Rule 1915.8(b). Indeed, the court itself, as is implied in the passage set forth above, recognized as much. Father, in an exercise of due diligence, filed a motion seeking permission to cross-examine Dr. Addis. Record, No. 61. At a hearing conducted two days later, the court made it clear it would procure Dr. Addis, even if that meant imprisoning him but then issued an Order not referencing the issue. To then place the burden on father to subpoena Dr. Addis would be inequitable.

¶ 17 *Robinson, supra,* to which mother cites to, has no relevancy to our disposition. In *Robinson,* this Court stated "it is reversible error for the trial court to use information from investigative reports where the persons who prepared the reports did not attend the hearing and were not subject to cross-examination." 460 A.2d at 1172 (citations omitted). On appeal, the Supreme Court reversed our decision after concluding this Court raised the issue pertaining to the trial court's unlawful admission of investigative reports *sua sponte,* thereby exceeding the proper scope of our review. 478 A.2d at 805. In this matter, father properly preserved the issue relative to the admission of Dr. Addis' report, distinguishing this case from *Robinson.*

¶ 18 Mother's suggestion that father was not prejudiced by Dr. Addis' report is also without foundation. The trial court considered the opinions offered by three experts, Dr. McNamara, Dr. Addis, and Dr. Glass. Trial Court Opinion at 4. Of these three experts, only Dr. Addis offered an

opinion which could be construed as supporting mother's position. *See* Dr. Addis *Custody summary,* Analysis regarding Dalton, at 3–4 ("Dalton said that he wants to live with his mother."), *cf.* Record, Defendant's Exb. 4, Dr. Glass Psychiatric Custody Evaluation, at 34 ("At this time I believe [the children's] needs are best met by [father] having primary physical custody."); N.T., Testimony of Dr. McNamara, 4/21/06, at 41 ("I had no concerns about either parent being a full-time parent."). While the trial court does note at one point that Dr. Addis' report merely confirmed its "own observations," namely that Dalton supposedly wanted to live with mother, it is clear from the record the trial court's "observation" in this regard occurred in the context of the trial court's unlawful *in camera* examination of Dalton. *See* Trial Court Opinion at 3, 4 n. 1.

¶ 19 Father's final two assignments of error merit cursory consideration. Father contends the trial court erred by failing to file findings of fact. We are unaware of any authority which stands for the proposition that a trial court must issue findings of fact in a custody matter before issuing an opinion or in conjunction therewith. *Sandra L.H., supra* at 1243 ("What is required is an opinion which demonstrates that the trial judge has analyzed the record as a whole and has dealt with significant factual disputes in a manner which will enable the appellate courts to understand the reasons for the decision and to make an intelligent evaluation of the opinion and of the testimony."), *citing G.M.P. v. A.P.,* 280 Pa.Super. 372, 421 A.2d 769, 772 (1980).

¶ 20 Father's final assignment of error raises a challenge to the court's weighing of the evidence. The record in this matter, which does not include the matters disclosed during the court's *in camera* examination of the children and which for-

mally does not include Dr. Addis' report, is incomplete. Hence, review of the trial court's weighing of the evidence would be premature.

¶ 21 On remand, the trial court is directed to hold a new custody hearing within 60 days of the date of this Opinion. At this hearing, the trial court is free to interrogate Derek and Dalton. Should the trial court choose to do so, it shall comply with the procedure set forth in Rule 1915.11(b). At the hearing, either party may move to admit Dr. Addis' report. The trial court, however, may not admit or consider Dr. Addis' report, presuming father again raises a timely objection, unless Dr. Addis is subject to cross-examination.

¶ 22 Order vacated; case remanded for proceedings consistent with this Opinion.

¶ 23 Jurisdiction relinquished.