J-S26044-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| R.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.M. | : | |
| | : | |
| Appellant | : | No. 126 WDA 2020 |

Appeal from the Order Entered December 19, 2019
In the Court of Common Pleas of McKean County Civil Division at No(s):
No. 501 C.D. 2018

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED JULY 06, 2020**

J.M. (Mother) appeals from the December 19, 2019 final custody order entered in the Court of Common Pleas of McKean County (trial court) awarding R.S. (Father) primary physical custody of their 13-year-old daughter.  Because the trial court based its decision in part on its unrecorded interviews with the daughter, we vacate and remand.

**I.**

The parties married in 1995 and had two daughters, T.S. (born in February 1997) and A.S. (born in December 2006) (Child).  In November 2011, Father filed for divorce in Elk County and requested partial custody of the parties' daughters.  At the time, both daughters were living with Mother

---

[*] Retired Senior Judge assigned to the Superior Court.

in the marital home. Tragically, while the divorce was pending in 2012, T.S. died in an accident at age 15. After her death, the parties eventually reached a custody agreement of Child in October 2013, with Mother keeping primary physical custody while Father received partial custody. In 2015, Father filed a petition for modification. Around the same time, Mother moved with Child to neighboring McKean County. In February 2016, the parties reached a new agreement in which Mother retained primary physical custody while Father received custody two weeknights per week plus every other weekend. After the parties finally divorced in May 2016, there were no further developments for almost two years until March 2018, when the parties agreed to transfer venue to McKean County.

The dispute in this appeal began on June 15, 2018. On that date, Father filed a petition for special relief requesting make-up time with Child because of conflicts with his schedule. The trial court treated the petition as seeking modification and, after mediation failed, scheduled a trial. At the contentious November 29, 2018 custody trial, Father presented evidence that Child had a strained relationship with Mother and was unhappy living with her. Mother strongly disputed these claims and portrayed Child as having a great relationship with Mother. After all witnesses testified, the trial court conducted an off-the-record interview of Child with counsel present. The next day, the trial court ordered a mental health evaluation of Child and entered an interim custody order increasing Father's weekends to three a month.

The case then stalled because of difficulty finding a mental health evaluator. When the evaluation was finally completed, the parties reconvened for an August 14, 2019 status conference at which the trial court expressed that it found the evaluation unhelpful. At Mother's request, the trial court conducted another off-the-record interview of Child at the conference. As later recounted in the trial court's Rule 1925(a) opinion, Child expressed that she wished to live with Father because of Mother's disparaging treatment of her. Trial Court Opinion (T.C.O.), 2/11/20, at 7. A week later, on August 21, 2019, Father alleged in an emergency petition for custody that Mother berated Child after the conference because of what she told the court. Mother disputed this claim in her reply, averring that Child told her that she hated staying with Father. Understandably, based on these conflicting claims, the trial court appointed a guardian *ad litem* (GAL) to represent Child and scheduled a hearing on the emergency petition for September 3, 2019.

At that hearing, the trial court held an on-the-record discussion with both parties and their counsel rather than receive evidence about what happened after the status conference. Also present was the GAL, who relayed that Child told her that she wanted to live with Father. Though Mother contested Father's allegations, both parties agreed with the GAL's recommendation that Child receive counseling. The trial court agreed and ordered the GAL to find a therapist and have Child begin counseling before

the next hearing.[1]  After Child began counseling, the parties met for another hearing on December 2, 2019.  Child's therapist testified that Child told him that she wanted to live with Father instead of Mother.  Child also apparently told the trial court the same thing in an *in camera* interview.  Like the prior two times, the interview was done without a court reporter.

On December 19, 2019, the trial court entered an order awarding Father primary physical custody of Child while Mother received two weeknights per week plus every other weekend.  In its accompanying opinion, the trial court analyzed the sixteen-factor best-interest test under 23 Pa.C.S. § 5328(a) and, because Child would be moving back to Elk County, the ten relocation factors under 23 Pa.C.S. § 5337(h).  While finding the majority of the best-interest factors as weighing on neither side, the trial court gave an extended discussion of the seventh factor concerning the preference of Child:

> The Court spoke with the Child.  She is somewhat immature for her age.  She genuinely loves both of her parents and wants to spend time with each of them.  She wants them to get along.  She and her Mother's personalities are vastly different and this has caused conflict in their relationship.  Child's aspirations and Mother's expectations for her differ.  Mother needs to be supportive of daughter and not judgmental of her performance whether it be on the athletic field, at school, in the home or in the community.  Mother's parenting style is authoritarian.  She admits to being overly protective of Child.  Father's parenting style is permissive.  He is more likely to allow Child to do what she wishes.  Mother on the other hand makes demands of Child that Child does not always find to be justified or reasonable.  Father indulges

---

[1] The trial court also increased Father's custody of Child on weekends to include Sunday overnights.

Child.  Father must be supportive of Mother's reasonable decisions regarding Child's permitted activities and behaviors.  Child has recently expressed to the Court and to her counselor, Mr. Owens, a wish to live with her Father.  Child's stated reason is that she and her Mother do not get along and that she wants to avoid further arguments with her.  The Court believes this wish is more basic - Mother won't allow her to be a teenager (Mother will be unduly restrictive) and Father will allow her greater freedoms.  If the Court is correct in this assessment Father must be less a friend and more a parent to Child.  The Court will give the Child's comments the weight the Court deems appropriate.

Opinion and Order, 12/2/19, at 9-10 (unpaginated).

In the trial court's view, the parties had placed Child at the center of their own disputes, and Child was attempting to please both of them by telling them what she thought they wanted to hear about the other parent.  The trial court, therefore, concluded that changing primary physical custody would reset the relationships between everyone for the better.  *Id*. at 12.

Mother timely appealed[2] and concurrently filed her Rule 1925(b) statement.  Though not specifically claiming that the trial court erred in

_____

[2] Our scope and standard of review of child custody orders are settled:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial

interviewing Child without a court reporter, Mother did allege that the trial court erred by relying on non-record evidence in changing primary custody to Father. While finding none of Mother's claims as individually warranting relief, the trial court nonetheless recommended in its Rule 1925(a) opinion that we vacate its final custody order and remand for further proceedings, predicting that "it is inevitable that because of the irregularities with some of the evidence one or the other of the parties will file a Petition for Modification of Custody at his or her first opportunity." T.C.O. at 3.

Relevant to our decision below, the trial court summarized more of its off-the-record interviews with Child in discussing its analysis of the best-interest and relocation factors.

> Child's reasons for wanting to live with Plaintiff/Father included Child's desire to avoid conflict with Defendant/Mother, to spend more time with her half-sisters and to be able to pursue her passion for horseback riding, an activity that Defendant/Mother has not supported. The Court concedes that it did not put all of Child's reasons in its opinion. Child's desire to reduce conflict about which there is a considerable amount of evidence is reason enough to change primary custody as Child's emotional well-being is a factor that is to be afforded great weight. Defendant/Mother often berated [C]hild to the detriment of Child's self-esteem and well[-]being. Child has kept a diary that paints a very harsh picture of Defendant/Mother. And, it is evident to the Court from its several meetings with Child that she and her Defendant/Mother are often at odds with each other. Repeatedly berating one's child is not acceptable conduct. Defendant/Mother's conduct has

---

> court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***S.T. v. R.W.***, 192 A.3d 1155, 1160 (Pa. Super. 2018) (citation omitted).

- 6 -

caused friction in her and Child's relationship and has caused Child emotional distress.

*Id*. at 23-24.

## II.

Mother argues that the trial court, in giving Father primary custody, repeatedly relied on statements that were made by Child during interviews with the trial court. However, as Mother observes, because none of these interviews were recorded or transcribed by a court reporter, this Court is now faced with having to assess the trial court's custody determination based on facts that are outside of the record. Mother's Brief at 53-54, 56. We agree.[3]

Pennsylvania Rule of Civil Procedure 1915.11 governs the interview of a child involved in a custody matter. Under that rule, an interview of the child is discretionary and not mandatory. *T.D. v. E.D.*, 194 A.3d 1119, 1125 (Pa. Super. 2018). However, when such an interview occurs, our Supreme Court is clear about how it is to be conducted.

> Rule 1915.11. Appointment of Attorney for Child. Interview of Child. Attendance of Child at Hearing or Conference
>
> . . .
>
> (b) The court may interview a child, whether or not the child is the subject of the action, in open court or in chambers. The interview shall be conducted in the presence of the attorneys and, if permitted by the court, the parties. The attorneys shall have

---

[3] In his brief, Father addresses neither the off-the-record interviews with Child nor the trial court's recommendation that we vacate its final custody order.

the right to interview the child under the supervision of the court. **The interview shall be part of the record.**

Pa.R.C.P. 1915.11(b) (emphasis added).

Before the adoption of Rule 1915.11, this Court held that it was non-waivable reversible error for a trial court to base its custody decision on an unrecorded interview with the child, finding that the failure to transcribe the interview precludes adequate appellate review. *Commonwealth ex rel. Scott v. Rider*, 375 A.2d 149, 151 (Pa. Super. 1977); *Gunter v. Gunter*, 361 A.2d 307, 310-12 (Pa. Super. 1976) (holding trial court improperly relied on untranscribed statement of child).

We reaffirmed this holding after the adoption of Rule 1915.11 in *Ottolini v. Barrett*, 954 A.2d 610 (Pa. Super. 2008). There, the father challenged a trial court's failure to make a record of its interview with his children. The trial court admitted that it did not create a record of its interview, but explained that it did so in order to preserve the confidentiality of the children's testimony and protect against recriminations from the parents. *Id*. at 612-613. On appeal, we held that the trial court's well-intentioned concern for confidentiality did not overcome our Supreme Court's clear mandate in Rule 1915.11 that any interview with a child must be made part of the record. *Id*. at 613. We further observed that it was clear the trial court relied, at least in part, on the unrecorded interviews. *Id*. Accordingly, because the interview with the children was not part of the record, the record was incomplete and

prevented the panel from assessing whether the trial court properly weighed the evidence. *Id*. at 615.[4]

Turning to this case, all of the interviews with Child were held without a court reporter, including the final December 2, 2019 interview when she apparently expressed that she wanted to live with Father. N.T., 12/2/19, at 34. Additionally, as quoted at length above, the trial court relied on Child's statement in its consideration of Child's preference under 23 Pa.C.S. § 5323(a)(7). The same is true in the above-quoted passage from the trial court's Rule 1925(a) opinion in which the court credits Father's factual contentions that Mother often berated Child and caused her emotional distress.

As evidenced by these passages, the trial court relied heavily on Child's interviews in resolving the factual disputes at the center of the parties' dispute. Indeed, at the time it rendered its final custody decision, it had been over a year since the November 2018 custody trial. After that trial, the only record evidence received by the trial court was from the therapist at the December 2, 2019 hearing that, in any event, the trial court later admitted

_____

[4] The ***Ottolini*** panel also held that the trial court erred in relying on the opinions in an expert report that was never admitted in violation of Pa.R.C.P. 1915.8(a). ***Ottolini***, 954 A.2d at 613-615. In so finding, however, the panel clarified that the trial court's error in failing to record the interview with the children was sufficient to vacate the trial court's order, and that it was addressing the failure to admit the expert's report given that the case would be remanded. *Id*. at 613.

was afforded little weight. T.C.O. at 24. As a result, it is evident that Child's testimony was the main basis for the trial court's factual findings and, ultimately, its awarding Father primary physical custody. This case, therefore, differs from those instances when we have excused a trial court's failure to record its interview with a child because there was substantial creditable record evidence outside of the child's testimony to support the factual findings. *See*, *e.g.*, *N.H.M. v. P.O.T*., 947 A.2d 1268, 1273-76 (Pa. Super. 2018) (trial court's factual finding that children were sexually assaulted was supported by record evidence outside of its *in camera* unrecorded interviews with the children).

By failing to interview Child with a court reporter present, we are hindered in being able to fulfill our duty under our broad scope of review. Under our standard of review, while we must accept the factual findings of a trial court in a custody matter, we are only bound to do so if they "are supported by competent evidence of record." *S.T., supra.* Here, because the trial court's factual findings and inferences hinge on non-record testimony taken in violation of the clear language of Rule 1915.11(b), as well as our holding in *Ottolini*, our ability to conduct meaningful appellate review of the trial court's determination is severely hampered. Consequently, we vacate the trial court's final custody order.

Accordingly, we remand the matter to the trial court to interview Child again in accordance with Rule 1915.11(b) and issue a new decision within 45

days of the date of this Memorandum. To satisfy the interests of finality and stability in custody arrangements for this child, we order that the current custody arrangements be retained pending the outcome of a new decision.

Order vacated; case remanded for proceedings consistent with this Memorandum.

Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/6/2020