Amin KASSAM, Appellant,

v.

**Ruhil KASSAM, Appellee.**

**Amin Kassam, Appellee,**

v.

**Ruhil Kassam, Appellant.**

Superior Court of Pennsylvania.

Argued June 18, 2002.

Filed Oct. 31, 2002.

Reargument Denied Jan. 3, 2003.

---

Mary S. Ramsden, Pittsburgh, for Amin Kassam.

Joanne Ross Wilder, Pittsburgh, for Ruhil Kassam.

Before: JOHNSON, JOYCE and HESTER, JJ.

OPINION BY HESTER, J.

¶ 1 Amin Kassam ("Father") and Ruhil Kassam ("Mother") each appeal the September 25, 2001 custody order (the "Custody Order") pertaining to their two minor children. We quash.

¶ 2 We present a brief factual and procedural history, based on the summary provided by the trial court and the parties' briefs. A detailed factual review is not necessary herein in light of our decision to quash this appeal. Father was born in Uganda and immigrated to Canada in 1972 with his father and stepmother. He attended medical school at the University of Toronto and graduated in 1991. Mother attended school in New York and obtained a degree as a dental hygienist in 1991. The parties were married in Toronto on June 8, 1991 and remained in Canada while Father completed his residency in neurosurgery. At that time, Mother worked as a dental hygienist. Their first son, Armand, was born in Toronto on May 10, 1995. The parties moved to Allegheny County after the University of Pittsburgh Medical Center offered Father a junior faculty fellowship in neurosurgery to begin in November of 1997. Their second son, Mikaeel, was born in Pittsburgh on November 5, 1999. Husband's parents and Mother's parents and her six siblings remain in Toronto.

¶ 3 After returning to Pittsburgh after a family vacation in St. Maarten in January of 2001, Father sought a divorce. With the involvement of Father's paramour, the unusual details of which are not necessary to reiterate here, Father had Mother sign a consent agreement delineating the parties' custody rights. Mother thereafter returned to Toronto with the children. Mother filed a petition for custody in Toronto, but the parties later agreed that jurisdiction and venue would be in Allegheny County.

¶ 4 The parties mutually selected a psychologist to interview the parties and children and make a custody recommendation to the court. Custody hearings were held on August 8 and 9, 2001, and on September 12, 2001. Again, it is not necessary to

reiterate the details of the testimony elicited at these hearings, except to say that each party has strengths and weaknesses related to their ability to parent the children. The court entered the Custody Order on September 25, 2001.

¶ 5 In the Custody Order, the court granted shared legal custody to the parties and delineated a shared physical custody scheme whereby (1) Father will have primary physical custody of Armand during the school year and Armand will reside with Father and attend school in Allegheny County, and (2) Mother will have primary physical custody of Mikaeel during the school year and Mikaeel will reside with Mother and attend school in Toronto. The Custody Order further provided for Father to have partial custody of Mikaeel on Wednesday evenings during the school year if Father is in the Toronto area, and Mother to have the same partial custody rights to Armand if she is in Allegheny County during the school year. During the summer, Mother is to have primary custody of both children in Toronto, with father having partial custody of both children every other weekend. The Custody Order set forth detailed schedules for shared holidays and one-week summer vacations for each party with the children. The Custody Order established the method by which the parties shall transport the children between Toronto and Allegheny County, with a transfer point near Buffalo, New York.

¶ 6 We must first address the appealability of the Custody Order, since it expressly indicated the court would retain jurisdiction and conduct a review hearing, approximately eight months later, on May 2, 2002. *See* Custody Order, 9/25/01, at ¶¶ 11, 12. After the parties filed their notices of appeal, the trial court did not submit a Pa.R.A.P. Rule 1925(a) opinion, apparently viewing the Custody Order as

an interim order since it set a review hearing. On January 4, 2002, an application for relief was filed with this Court to compel the trial court to file a Rule 1925(a) opinion. We granted the application for relief and remanded to the trial court for completion of the record.

¶ 7 Generally, "a custody order will be considered final and appealable only after the trial court has completed its hearings on the merits and the resultant order resolves the pending custody claims between the parties." *G.B. v. M.M.B.,* 448 Pa.Super. 133, 670 A.2d 714, 715 (1996) (quashing appeal as interlocutory where order allowing father partial custody pending completion of hearings contemplated additional hearing on ultimate issues in the case). In the context of finality of orders, we recognize the uniqueness of custody orders compared to orders in other civil actions. *Id.* at 718, n. 9.

> Child custody orders are temporary in nature and always subject to change if new circumstances affect the welfare of a child. The Commonwealth has a duty of paramount importance, to protect the child's best interests and welfare. To that end, it may always entertain an application for modification and adjustment of custodial rights.

*Id.* (citations omitted). In *G.B.,* we summarized cases in which custody orders were deemed appealable, even though such orders contemplated potential future review by the trial court, and compared them to cases reaching the opposite result. A review of those case summaries, as excerpted from our opinion in *G.B.,* is helpful:

> In *Parker v. MacDonald,* [344 Pa.Super. 552, 496 A.2d 1244 (Pa.Super.1985) ] we examined an order, entered after a full hearing on all issues relevant to custody, which directed a schedule for shared custody by the parties and stated

that the court would entertain an application for review of those arrangements several months in the future in order to consider arrangements for the child's enrollment in school. We held that the language making the order open to further review did not defeat the finality or appealability of the order because the order completely disposed of the parties' rights to custody unless and until a petition for reexamination of custody was filed by one of the parties. We concluded that the language of the trial court's order merely made explicit what is always implicit in a custody order—the availability of modification upon a proper showing by the parties—and hence that the finality of the order, which otherwise constituted a complete resolution of the parties' dispute, was not vitiated. *Id.* at 558, 496 A.2d at 1247.[1]

Similarly, in *Cady v. Weber,* 317 Pa.Super. 481, 464 A.2d 423 (1983), this court found final an order which resolved the ultimate issue of custody in an action between a mother and her parents. The order was entered after the completion of hearings on the issues relevant to custody and directed that custody of the children, who had resided with the maternal grandparents for several years, should be transferred to their mother. However, the order also directed that the transfer of custody be delayed pending further studies of the children in both parties' homes and the court's formulation of a plan for implementation of the transfer of custody.

We held that the order in question finally resolved the ultimate issue between the parties, namely, whether custody should be transferred to the children's mother. We noted that the further proceedings contemplated by the court were not designed to allow reconsideration of its determination, but rather to implement that determination in a way that would minimize the traumatic impact of the change in custody upon the children. Accordingly, we concluded that the fact that details of *implementation* of the order remained to be worked out did not vitiate the finality of the court's determination. *Id.* at 487, 464 A.2d at 426.

In contrast, in *Williams v. Thornton,* 395 Pa.Super. 276, 577 A.2d 215 (1990), we examined an order entered in response to an emergency petition for custody filed during the pendency of a father's petition to vacate a previous award of custody to a third party. The order determined the parties' rights to primary and partial custody pending resolution of father's petition to vacate custody and directed that the petition to vacate proceed through the normal pretrial and trial processes of the court. We held that the order was interlocutory and that the appeal should be quashed, noting that the order was entered prior to a full hearing on the ultimate custody issues and concluding that it was intended only to determine the parties' relations during the pendency of

---

1. In concluding the custody order in *Parker* was final, we stated:

Concededly, the lower court by its own terms provided for review of its [custody order], *but only upon application for such review by the lower court. This case was not scheduled for subsequent review by the lower court.* Rather, the court below encouraged the amicable resolution of the custody of their son by the parties themselves. If the parties reached an agreement, it is possible that further court intervention would not be required.

*Parker, supra,* 496 A.2d at 1247 (emphasis added). Unlike the custody order in Parker, the Custody Order in the instant case included a specific scheduled date for review, as will be discussed *infra,* which leads us to the conclusion the Custody Order is interlocutory.

the custody litigation, not to resolve the ultimate issues central to the parties' dispute. *Id.* at 279, 577 A.2d at 217.

In *Sawko v. Sawko,* 425 Pa.Super. 450, 625 A.2d 692 (1993), we touched the issue of finality in a situation which presented a middle ground between *Parker, supra,* and *Cady, supra* on the one hand (where the order appealed from was entered after a full hearing and was intended to constitute a determination of the ultimate issues between the parties) and *Williams, supra* on the other (where the order appealed from was entered before a full hearing and was intended to determine the parties' rights only during the pendency of the litigation). *Sawko* involved an appeal from an order entered in response to a mother's petition to modify an order entered five weeks earlier which awarded primary custody to her child's father. The trial court conducted a hearing on the petition to modify at which both parties were permitted to put on as much evidence as they wished. At the conclusion of the hearing, the court entered an order which denied the petition to modify primary custody but increased the mother's partial custody rights *and scheduled an additional review hearing about four months in the future.* This court noted, without elaboration, that the order was interlocutory and that mother's appeal therefrom was premature and subject to quashal. *Id.* at 458, 625 A.2d at 696.

The reasons for this conclusion are clear. Although the court's order was entered after a full hearing, it clearly was *not* intended to constitute a complete resolution of the issues pending between the parties. Unlike the order in *Parker, supra,* or *Cady, supra,* the trial court's order did not completely resolve the issues raised by the parties unless and until further proceedings were initiated by a party. Rather, the *Sawko* court's order, although declining to grant the ultimate relief sought by the petitioner—mother, made an adjustment in its previously ordered custody arrangement and scheduled a further review of the matter. *By scheduling further review for a date certain rather than leaving it up to the parties to seek such review, the trial court made it clear that the ultimate issues between the parties remained under consideration.* The court's order was merely intended, in light of the brief time period between its initial custody order and the petition for modification, *to allow the court more time to study the effects of the ordered arrangement upon the child and to make a final determination at a later date as to whether a modification of primary custody would be in the child's best interest.*

Based on the case law cited above and the important policy concerns implicated in custody proceedings, *we hold that a custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties.* We conclude that this holding will protect the child from the protraction of custody litigation through repetitive appeals while still allowing prompt and comprehensive review of custody determinations. It will also support judicial economy and efficiency and uphold the integrity of the trial court's process in deciding custody matters. On the one hand, to permit piecemeal appeals subjects the child to the uncertainties of ongoing litigation. A custody proceeding, whether on the trial or the appellate level, threatens a child's stability. On the other hand, a

custody decision once finally made must be subject to review. Drawing a bright line by which finality may be determined will encourage judicial economy and efficiency by making it clear both to litigants and to trial courts when the appellate process may properly be invoked. *Our holding also serves to uphold the integrity of the trial process by not interfering with the trial court's efforts to craft a final decision and by not permitting premature challenges to those efforts.* In striking a balance between postponing and granting an appeal, we have attempted to serve primarily the best interests of the child.

*G.B.,* 670 A.2d at 718–21 (emphasis added and footnotes omitted). We reviewed the above cases cited in *G.B.* and agree with the summaries of such cases as excerpted form our opinion in *G.B.* Based on the extensive case law review and formulation of the above rule in *G.B.,* we concluded the custody order at issue in *G.B.* was not appealable for two reasons: (1) the order was entered before completion of the hearings; and (2) the trial court scheduled a date for continuation of the hearings. *Id.* at 721.

 ¶ 8 In the instant case, although it appears the hearings were completed, we are troubled by the fact the trial court, in its Custody Order, *expressly retained jurisdiction and scheduled a hearing for review of the Custody Order on May 2, 2002,* at 9:30 A.M. at a specific location. Moreover, we note that the trial court did not initially submit a Rule 1925(a) opinion after the parties filed their notices of appeal, since it apparently viewed the Custody Order as an interim order. It was only after we granted an application for completion of the record did the trial court submit its Rule 1925(a) opinion. In this regard, we liken the procedural posture of this case to that of *Sawko* where, although

custody hearings were completed, the trial court scheduled further review *on a date certain* rather than leaving it up to the parties to seek review, as had been done in the orders under review in *Parker* and *Cady. Cf. Parker, supra,* 496 A.2d at 1247 (emphasizing court did not schedule future review hearing for date certain and inferring that such fact weighed in favor of concluding custody order was final, as compared to situation in which hearing was scheduled). In *G.B.,* we inferred that the *Sawko* court's scheduling of a review hearing on a date certain "made it clear that the ultimate issues between the parties remained under consideration." *G.B.,* 670 A.2d at 719–20. Similarly, by expressly retaining jurisdiction and scheduling a hearing for a date certain, the trial court in the instant case apparently intended to keep the issues under consideration, most likely to assess whether a complex custody order in a factually complex case, involving parties living in different countries and involving the separation of siblings for substantial amounts of time, would indeed effectuate the best interests of the children. We are therefore constrained to quash this appeal and urge the trial court to conduct its Custody Order review hearing, which had been originally scheduled for May 2, 2002, as soon as possible upon transmission of this adjudication, as such review hearing was likely suspended due to the pendency of this appeal. The court thereafter is directed to file an appropriate order and opinion.

¶ 9 Appeal quashed.