J-S19036-15

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| J.N., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| L.M., | |
| Appellee | No. 2669 EDA 2014 |

Appeal from the Order entered on August 21, 2014,
in the Court of Common Pleas of Montgomery County,
Civil Division, at No(s): 08-08736

| J.N., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| L.M., | |
| Appellee | No. 2980 EDA 2014 |

Appeal from the Order entered on September 12, 2014,
in the Court of Common Pleas of Montgomery County,
Civil Division, at No(s): 08-08736

BEFORE:  STABILE, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 15, 2015**

J.N. ("Father"), *pro se*,[1] appeals from the Final Custody Order entered on August 21, 2014, awarding him and L.M. ("Mother") shared legal custody of their child, L.N., born in April 1999 ("Child" or "L."), and Mother primary

---

[1] Father is an attorney admitted to practice in Pennsylvania.

physical custody, subject to periods of partial custody in Father. Father also appeals from the trial court's September 12, 2014 Order, requiring him to contribute 35% of Child's Springside Chestnut Hill Academy ("SCH") private school tuition for the 2014-2015 school year. We affirm both Orders.

The trial court set forth the relevant factual and procedural history underlying these appeals in its Pa.R.A.P. 1925(a) Opinion; we incorporate the court's recitation herein by reference. *See* Trial Court Opinion, 9/25/14, at 1-2.[2]

Following the trial court's entry of its Final Custody Order on August 21, 2014, Father timely filed a Notice of Appeal, along with a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On August 26, 2014, Mother filed an "Emergency Petition for Special Relief," seeking an order requiring Father to contribute 35% (approximately $9,000 after the application of financial aid) of Child's tuition costs for SCH. After a hearing, the trial court entered an Order, on September 12, 2014, determining that the parties were bound by the terms of their prior Arbitration Conclusions/Award ("Arbitration Award"), which was merged into the parties' divorce Decree, such that Father must contribute 35% of Child's

---

[2] As an addendum, we observe that following Father's filing of several Motions challenging the trial court's sealing of the notes of testimony from the trial court's November 7, 2012 *in camera* interview of Child and A.N. (hereinafter "the *in camera* transcript"), the trial court entered an amended Order on December 19, 2012, directing that the *in camera* transcript was "supersealed."

SCH tuition for the 2014-2015 school year. Moreover, the trial court found that Father was unable to demonstrate a financial hardship or inability to pay.

Father timely filed a Notice of Appeal from the September 12, 2014 Order. Though Father did not simultaneously file therewith a concise statement of errors complained of on appeal, he promptly complied with the trial court's Order to file his Concise Statement.[3]

In October and November 2014, Father filed Motions in the trial court seeking to correct and supplement the certified record with certain documents, including the *in camera* transcript. In response, the trial court entered an Order directing the trial court's prothonotary to transmit to this Court a supplemental certified record, which included the *in camera* transcript and every document sought by Father. The trial court prothonotary sent this panel a supplemental record, which included the *in camera* transcript, and the other notes of testimony from A.N.'s *in camera*

---

[3] We deem Father's procedural misstep in failing to simultaneously file his Concise Statement with his Notice of Appeal harmless, since it was not prejudicial to any party. ***See In re K.T.E.L***, 983 A.2d 745, 747 (Pa. Super. 2009).

- 3 -

testimony on February 3, 2012, under seal.[4]

On November 7, 2014, this Court, *sua sponte*, consolidated Father's two appeals.

On appeal, Father presents the following issues for our review:

1. Did the trial court abuse its discretion and/or commit an error of law when it exceeded its judicial authority by modifying the custody of a teenager, on a non-temporary basis, based solely on an allegation of contempt, prior to conducting a custody hearing, without considering the 16 factors contained in the Pennsylvania Child Custody Act, and in an effort to punish Father?

2. Did the trial court abuse its discretion or commit an error of law when it misapprehended P[ennsylvania] [c]hild [c]ustody law and entered a final custody [O]rder on August 21, 2014[,] that is unsupported by the record facts, incongruent with [Child's] best interests, and in contravention to P[ennsylvania] statutory and decisional law?

3. Did the trial court abuse its discretion when it denied Father's [M]otion(s) for the [trial] court judge to recuse, considering, *inter alia*, that during a hearing on Father's recusal [M]otion, the [trial] court did not refute that it [had] violated Father's due process rights?

4. Did the trial court abuse its discretion or commit an error of law by "supersealing" notes of testimony from the parties, from the attorneys of record, from proper appellate review, and in contravention to Constitutional and Pennsylvania law?

---

[4] On October 7, 2014, Father filed in this Court a Motion for special relief ("Motion to release transcript") requesting the release of the *in camera* transcript, which the trial court had "supersealed." On February 17, 2015, this Court denied Father's Motion to release transcript without prejudice to Father's right to reraise the matter before this panel. Father appears to reraise his Motion to release transcript in his brief and reply brief. **See** Father's Brief at 113; Father's Reply Brief at 28. We dismiss the Motion as moot, since the trial court included the *in camera* transcript in the certified record.

5. Did the trial court abuse its discretion when it ordered [Child's] enrollment at [SCH] and continued enrollment under arbitrary conditions, without a finding [that Child's] enrollment was a reasonable need?

6. Did the trial court abuse its discretion when it ordered Father to contribute 35% of [Child's SCH] tuition in 2014-2015, when the same [trial] court did not order Father to contribute in 2013-2014, [and] the same [trial] court previously denied his [P]etition for a dependency exemption to help fund [Child's] education, when Father does not currently earn 35% of the parties['] net income, when Mother concedes SCH Academy attendance is a luxury, when [A.N.] struggled and barely graduated from SCH at great cost, and Mother has failed to prove[,] and the lower court has not found, that [Child's] SCH enrollment is a reasonable need?

Father's Brief at 18-20.

Our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

Additionally, this Court has stated that

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge

gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

Section 5338 of Child Custody Act ("the Act")[5] provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S.A. § 5338; ***see also M.J.M. v. M.L.G.***, 63 A.3d 331, 334 (Pa. Super. 2013) (stating that "[t]his standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.") (citation omitted). Moreover, in any custody action between two parents, there is no presumption that custody should be awarded to a particular parent. 23 Pa.C.S.A. § 5327(a). Section 5328(a) of the Act sets forth sixteen factors (collectively referred to as "the sixteen best interest factors") that a trial court must consider when awarding custody. ***Id.*** § 5328(a).

In his first issue, Father challenges the trial court's December 14, 2012 Interim Custody Order (which awarded Mother primary physical custody of Child, and awarded Father partial custody), as both an improper contempt order and an improper modification order. ***See*** Father's Brief at 44-54. Father contends that the trial court lacked authority to find him in civil

---

[5] ***See*** 23 Pa.C.S.A. §§ 5321 to 5340; ***see also C.R.F.***, 45 A.3d at 445 (stating that, where, as here, the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

contempt of the underlying custody Order, and modify custody. ***See id.*** (relying on ***P.H.D. v. R.R.D.***, 56 A.3d 702, 706-07 (Pa. Super. 2012) (holding that the trial court violated due process of law by modifying a custody order without holding a custody modification hearing, where the trial court had before it only a contempt petition), and ***Langendorfer v. Spearman***, 797 A.2d 303, 308-09 (Pa. Super. 2002) (same)). Father also asserts that the Interim Custody Order was an improper modification order because it was not temporary, was not based upon any emergency, and continued in effect until the trial court entered the Final Custody Order on August 21, 2014. Father's Brief at 44, 54. Father argues that the trial court improperly imposed the Interim Custody Order to "punish" him, without proper notice and an opportunity to be heard at a full custody modification hearing, and without adequately considering the sixteen best interest factors. ***See id.*** at 44-45, 47-48.

Father is essentially challenging the propriety of the Interim Custody Order. This Order, however, was not the trial court's final pronouncement concerning the custody proceedings, and was not appealable. ***See Kassam v. Kassam***, 811 A.2d 1023, 1028 (Pa. Super. 2002) (stating that, where a trial court enters an order, but expressly retains jurisdiction and schedules a hearing for a date certain, such an interim custody order is not final and appealable). "[A] custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearing on the

merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." *Id.* at 1027 (citation omitted).

Here, the trial court entered its Final Custody Order after having conducted a complete custody hearing, which afforded Father notice and an opportunity to be heard. The record confirms that the trial court considered the sixteen best interest factors in this matter in relation to its Final Custody Order. *See* Findings of Fact, 8/20/04, at 2-7 (wherein the trial court thoroughly considered and discussed the sixteen best interest factors and the evidence presented at the custody hearings relating to Child). Additionally, the trial court explained that

> Father provides no evidence for his claim that the … [Interim C]ustody [O]rder was entered to "punish" Father. [The trial court] only has the best interest of the child in mind when creating a custody order. The [trial c]ourt concedes that the … [Interim C]ustody [O]rder was entered on an emergency basis (and without a full custody hearing and analysis of the [sixteen best interest] factors); however, [the court] cannot agree that the entry of this [] [O]rder[,] after the filing of an emergency [P]etition[,] was a violation of Father's due process rights.

Trial Court Opinion, 9/25/14, at 5. We agree and, thus, find no merit to Father's argument that the trial court improperly rendered the Interim Custody Order.

In his second issue, Father argues that, in the Final Custody Order, the trial court erred in awarding Mother primary physical custody. *See* Father's Brief at 60-76. Father urges that the trial court's interpretation of the

sixteen best interest factors was defective. *See id.* Father asserts that Child indicated her preference to live with him. *Id.* at 60. Additionally, Father argues that, given Mother's allegedly insufficient parental history with the parties' older daughter, A.N., the trial court should have ordered Child to reside primarily with him. *See id.* at 57-60. Father contends that the trial court's inferences and deductions about Mother's parenting history with regard to A.N. are not supported by the record. *See id.* at 57-59.

> This Court has stated that

> [a]lthough the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest. The weight to be attributed to a child's testimony can best be determined by the judge before whom the child appears.

*Ketterer*, 902 A.2d at 540 (citations and quotation marks omitted).

In its Pa.R.A.P. 1925(a) Opinion, the trial court addressed Father's claims, stated that it had considered Mother's parenting history regarding A.N., and Child's preference to spend more time with Father, and opined that it properly exercised its discretion in rejecting Father's challenge to the court's awarding primary physical custody to Mother. *See* Trial Court Opinion, 9/25/14, at 4-5, 7-8; *see also Ketterer, supra*. After our careful review of the certified record, we find that the trial court's findings, including its determinations concerning Child's preference and Mother's parenting history with A.N., are supported by competent evidence of record, and therefore affirm based upon the trial court's Opinion concerning this claim.

*See* Trial Court Opinion, 9/25/14, at 4-5, 7-8; *see also C.R.F., supra* (stating that an appellate court must defer to the trial court's credibility and weight assessments).

Also in his second issue, Father asserts that, in imposing paragraph 8 of the Final Custody Order,[6] the trial court improperly included modification of custody as a possible sanction for a party's future contempt. *See* Father's Brief at 55-56. In support of this claim, Father relies on *G.A. v. D.L.*, 72 A.3d 264, 269-70 (Pa. Super. 2013) (where the trial court modified the parties' existing custody order at a contempt hearing by reinstating a prior custody order, holding that such modification was improper because there was no petition for modification of custody before the trial court and both parties were not on notice that custody would be at issue regarding the contempt hearing). Father's Brief at 55-56.

We find the decision in *G.A.* inapplicable to the instant matter, as the trial court in that case improperly had modified a custody order without having a custody petition before the court. Here, the certified record reflects that neither party has yet sought a custody modification based on paragraph 8 of the Final Custody Order, nor has the trial court enforced paragraph 8 to modify custody without notice to either party that modification is at issue.

---

[6] Paragraph 8 provides as follows: "Any further attempt to alienate [Child] or disparage the other parent or his or her family in front of [Child] may result in sanctions including, but not limited to, an award of attorneys' fees, a modification of custody and/or incarceration." Final Custody Order, 8/21/14, ¶ 8 (emphasis omitted).

- 10 -

Accordingly, Father's argument concerning paragraph 8 is premature and does not entitle him to relief.

Next, Father argues that the trial court judge, the Honorable Kelly C. Wall ("Judge Wall"), abused her discretion by denying his Motions to recuse. Father's Brief at 77-80.[7] Father's basis for seeking Judge Wall's recusal is that she allegedly violated his due process rights under the United States and Pennsylvania Constitutions by modifying custody of Child in the Interim Custody Order, without affording him notice and an opportunity to be heard at a full custody hearing. *See id.* at 77-79. Father asserts that, at the August 8, 2013 recusal hearing, Judge Wall did not refute that she had deprived Father of due process. *Id.* at 78. Citing the Canons of the Code of Judicial conduct, Father contends that Judge Wall should have recognized her bias against him, and recused herself. *See id.* at 77-84.

"The party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal." *Commonwealth v. Darush*, 459 A.2d 727, 732 (Pa. 1983). Generally, a motion for recusal is initially directed to and decided by the judge whose impartiality is being challenged. *Goodheart v. Casey*, 565 A.2d 757, 763 (Pa. 1989). Where a judge rules that she can hear and dispose of a case fairly and without prejudice, that decision will be

---

[7] We observe that although Father's Brief is voluminous, he sought, and was granted, permission from this Court to exceed the word limit contained in Pa.R.A.P. 2135.

overruled on appeal only for an abuse of discretion. *Reilly by Reilly v. SEPTA*, 489 A.2d 1291, 1300 (Pa. 1985).

In the Pa.R.A.P. 1925(a) Opinion, Judge Wall explained her reasons for denying Father's two Motions to recuse, determining that she properly excercised her discretion in continuing to preside over the case in an unbiased fashion. *See* Trial Court Opinion, 9/25/14, at 7. After reviewing the record, we discern no abuse of discretion by Judge Wall in making this determination. Father failed to show that Judge Wall has exhibited bias, prejudice, or unfairness against him. Accordingly, we affirm with regard to this issue based upon the trial court's Opinion. *See id.*

In his fourth issue, Father contends that the trial court abused its discretion and/or erred as a matter of law when it "supersealed" the *in camera* transcript. *See* Father's Brief at 84-99. He argues that the trial court's "supersealing" of this transcript improperly precluded him from addressing any relevant issues concerning the *in camera* hearing on appeal, and impeded appropriate appellate review. *Id.* at 91-99; Father's Reply Brief at 17. Father alleges that the trial court's practice is a problem of widespread concern in the Montgomery County Bar. Father's Reply Brief at 18. Father relies on Pa.R.C.P. 1915.11(b) and *Ottolini v. Barrett*, 954 A.2d 610 (Pa. Super. 2008), in support of his assertion of error. *See* Father's Brief at 85-86, 96-97.

Pennsylvania Rule of Civil Procedure 1915.11(b) provides as follows:

> (b) The court may interrogate a child, whether or not the subject of the action, in open court or in chambers. The interrogation shall be conducted in the presence of the attorneys and, if permitted by the court, the parties. The attorneys shall have the right to interrogate the child under the supervision of the court. *The interrogation shall be part of the record*.

Pa.R.C.P. 1915.11(b) (emphasis added).

In ***Ottolini***, the father appealed an order granting primary physical custody of the parties' children to the mother. The father challenged the trial court's denial of an opportunity for him and his counsel to be present and participate in interviewing the children, and the court's failure to make the interview part of the record by having a court reporter present. ***Ottolini***, 954 A.2d at 612-13. The trial court acknowledged that it had not created any record of the interviews with the children, explaining that its practice preserved the confidentiality of the children and protected them from any recriminations from the parents or their counsel. ***Id.*** On appeal, a panel of this Court concluded that the trial court had misapplied the law, and the plain language of Rule 1915.11(b), and stated that it was clear from the trial court's opinion that the court had relied on the *in camera* interrogations. ***Id.*** at 613. This Court additionally concluded that, absent the children's testimony, it could not assess whether the trial court had properly weighed the evidence. ***Id.*** at 615.

Here, in the trial court's Pa.R.A.P. 1925(a) Opinion, the court addressed Father's claims, and opined that it properly rejected Father's challenge to the court's sealing and "supersealing" of the *in camera*

transcript. *See* Trial Court Opinion, 9/25/14, at 5-6. The trial court pointed out that although it had "supersealed" the *in camera* transcript from the November 7, 2012 hearing, both Child and A.N. subsequently testified in open court at the February 24, 2014 custody hearing, and Father questioned both of them at that time. *See id.* at 6 (opining that Father's challenge to the supersealing of the *in camera* transcript should therefore be deemed moot). We agree with the trial court that the sealing and supersealing of the *in camera* transcript did not impede our appellate review, as it is included in the certified record for this Court's review, and Father's claim in this regard is moot. *See id.* at 5-6. Accordingly, we do not herein rule on the propriety of the trial court's sealing and supersealing of the *in camera* transcript.[8]

Finally, we will address Father's fifth and sixth issues simultaneously, as they are related. Father argues that the trial court erred by applying the incorrect legal standard for private school enrollment, ignoring Pennsylvania statutory and case law, and misinterpreting the parties' binding Arbitration Award. *See* Father's Brief at 43; 99-100, 106-08. According to Father, the trial court failed to consider that, in Pennsylvania, the court may order the parties to pay for private schooling if it is demonstrated that private school is a *reasonable need*, and such private schooling is consistent with the family's standard of living and station in life prior to separation. *Id.* at 99-100

---

[8] We remind the trial court that it must abide by Pa.R.C.P. 1915.11(b), and the holding in **Ottolini**, which mandated that such transcripts must be included in the record for appellate review. The parties should not have to petition the court to include the transcripts in the certified record.

- 14 -

(citing **Pellish v. Gerhard**, 701 A.2d 594 (Pa. Super. 1999)). Father complains that the trial court did not provide a finding or any analysis of how Child's enrollment in SCH is a reasonable need. **See** Father's Brief at 106-07. Additionally, Father asserts that the trial court ignored Pa.R.C.P. 1910.16-6(d), which, in relation to private school tuition, provides that, "[i]f the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes." **Id.**; **see also** Father's Brief at 106-08 (emphasizing that the language of Rule 1910.16-6(d) concerns the parties' net incomes, not their "earning capacity"). Father further complains that the trial court Order, which directed him to contribute 35% of the tuition for Child's SCH enrollment, is unsupported by the evidence. **Id.** at 107. Father asserts that there is no record evidence that he earns 35% of the parties' combined net incomes (*i.e.*, the percentage that the trial court assigned to Father for the purpose of allocating Child's SCH tuition expenses). **Id.** at 108.

> When evaluating a [child] support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. … In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.
>
> * * *
>
> [T]he trial court, as the finder of fact, is entitled to weigh the evidence and assess the credibility of witnesses. A support order will not be disturbed on appeal unless the trial court failed

- 15 -

to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support, Pa.R.C.P. 1910.1 *et seq.*, or abused its discretion in applying these Rules.

***Morgan v. Morgan***, 99 A.3d 554, 556-57, 559 (Pa. Super. 2014) (citations and quotation marks omitted).

The ***Morgan*** Court observed that Pennsylvania Rule of Civil Procedure 1910.16-2(d)(4), governing earning capacity for the purpose of support actions, provides, *inter alia*, as follows:

> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity.

***Morgan***, 99 A.3d at 558 (emphasis omitted) (quoting Pa.R.C.P. 1910.16-2(d)(4)); ***see also Reinert v. Reinert***, 926 A.2d 539, 542 (Pa. Super. 2007) (stating that "[i]n determining a parent's ability to provide support, the focus is on earning capacity rather than on the parent's actual earnings.") (citation omitted).

In the instant case, the trial court made the following findings of fact concerning Child's enrollment in SCH and Mother's Emergency Petition for Special Relief:

> Through an [O]rder[] dated August 9, 2013, the [trial court] permitted [Child] to attend SCH for ninth grade[,] contingent upon Mother being solely responsible for the tuition.[FN 1] The [trial c]ourt specifically stated that "this decision is not based upon a finding that Father lacks the ability to pay private school tuition[,] and therefore this issue can be

- 16 -

re-evaluated by the [trial court] in the future, if necessary."[FN 2] The [c]ourt then noted that it would conduct a hearing in the future to review [Child's] academic performance and determine whether she would be returning to SCH and/or whether Father should have any financial obligation for tuition moving forward.

> [FN 1] The [trial court] entered the [O]rder permitting [Child] to attend SCH due to the problems [] [C]hild was experiencing at public school.

> [FN 2] Although the [parties'] Arbitration Award contains a provision that would have allowed [the trial] court to assess Father with 70 percent of the tuition costs, the [c]ourt was cognizant of the fact that Father was already contributing to [A.N.'s] tuition[,] and paying child support for the two children.

The parties appeared before the [trial court] for a … hearing on September 8, 2014[,] on Mother's [E]mergency [P]etition. At that hearing, Mother testified that she sought to re-enroll [Child in SCH] because [Child] performed well academically last year (earning a 3.6 grade point average). Mother argued that the terms of the parties' Arbitration []Award (which was merged into the parties' divorce [D]ecree) require Father to pay a portion of private school tuition, specifically [providing that] "the parties shall pay for the children's private school expenses and the expenses for camp or other summer activity as reflected on the bills for such private school/camp in the following percentages: Husband 70%/Wife 30%." **See**[] Arbitration Award, p. 31. Mother then introduced the current support [O]rder[,] in which Father was held to an earning capacity of $100,000. This [O]rder was signed by the parties on June 18, 2014.

Father argued that he is currently in a different financial situation and his actual earnings are less than his earning capacity. Father is 54 years old and has both a juris doctorate and a master in business administration degree. Father currently runs … an independent packaging company[,] and [he] also serves as an arbitrator for the Montgomery County Court of Common Pleas. [] Father testified that [the p]ackaging [c]ompany lost its largest client approximately three years ago[.] Father [also] testified that he only takes one arbitration case per quarter. Father has represented himself primarily in

- 17 -

this litigation since 2011; however, he testified that he is not representing any other clients. Father owns three automobiles and lives in a five[-]bedroom house, and he has a retirement account[,] which contains approximately $300,000. There are no arrears on Father's child support case.

The [trial c]ourt notes that Father did not file support exceptions or an appeal to the current support [O]rder. Nor has Father filed a petition to modify based on any alleged change of circumstances. Father provided no current documentation demonstrating his alleged inability to pay (*e.g.* bills, pay stubs). Rather, Father testified to the amounts of certain bills and then ambiguously alleged that the rest of his bills exceed his net earning capacity per month. Consequently, it is this [c]ourt's conclusion that the evidence presented indicates that the parties are bound by the terms of the Arbitration []Award.[FN 3] Additionally, the [c]ourt concludes that Father was unable to demonstrate a financial hardship or inability to pay.

[FN 3] There was no evidence presented to indicate Father challenged the [A]rbitration [A]ward through the proper procedure (in an appeal to the Court of Common Pleas) through a petition to vacate or modify the award at the time it was entered. Rather, the award was entered as an [O]rder when it was merged into the parties' divorce [D]ecree. *See*[] *Lowther v. Roxborough Memorial Hosp.*, 738 A.2d 480, 485 (Pa. Super. 1999).

Trial Court Findings of Fact, 9/11/14, at 1-2 (footnotes in original, one footnote omitted). Our review discloses that the trial court's findings are supported by the record.

Accordingly, the trial court considered and rejected Father's allegations of his decreased ability to pay for private school tuition for Child, imputing to Father an income equal with his earning capacity. *See* Pa.R.C.P. 1910.16-2(d)(4); *Morgan, supra*. Moreover, as the parties' Arbitration Award included a specific provision concerning their respective obligations to pay

for Child's private school tuition, the trial court was not required to make any finding that private schooling was a "reasonable need." We discern no abuse of the trial court's discretion by its finding that Father failed to prove that he lacks sufficient income to pay educational support for Child to attend SCH. We, therefore, conclude that Father's fifth and sixth issues lack merit.[9]

Orders affirmed. Father's Motion to release transcript dismissed as moot.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2015

---

[9] Father also argues in connection with his sixth issue that the trial court, in an effort to prejudice his appeal, took judicial notice of the June 18, 2014 child support Order (which is contained in the certified record), instead of allowing the actual Order to be admitted into evidence. Father's Brief at 109. Father did not identify this separate issue in his Statement of Questions Involved section, and it is therefore waived. **See** Pa.R.A.P. 2116(a) (providing that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). However, even if this claim was not waived, we would conclude that it lacks merit based upon the trial court's rationale in its Supplemental Trial Court Opinion. **See** Supplemental Trial Court Opinion, at 10/28/14 at 1, n.1 (wherein Judge Wall stated that "there is no appearance of impropriety when the [trial c]ourt takes judicial notice of documents that are already contained within the record.").

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

J██████ N██████          :       Common Pleas Court No: 2008-08736
         Plaintiff/Appellant    :

    vs.                           :

                             :        Superior Court No: 2669 EDA 2014

L██ M████████            :
         Defendant/Appellee   :

## OPINION

Wall, J.                                                 September 25, 2014

Plaintiff, J█████ N███ files this instant appeal from an Order dated August 20, 2014.

### FACTUAL AND PROCEDURAL HISTORY

J█████ N███ ("Father") and L███ M██████ ("Mother") were married on November █, 1990 and divorced through a decree dated May 24, 2010. They are the parents of two children: A███ N███ (DOB: 8/█/95) and L███ N███ (DOB: 4/█/99). A███ emancipated upon graduation from high school in June 2014. Consequently, the order at issue relates only to L███.

On October 25, 2012, Mother filed an "Emergency Petition for Special Relief" alleging that Father refused to comply with the custody order[1] by not requiring L███ to return to Mother's custody. On October 26, 2012, the undersigned entered an order scheduling the parties for a short-list conference and directing both parties to comply with the current custody order. On October 31, 2012, Father filed an "Emergency Petition" alleging that Mother dropped L███ off at his residence and the child refused to return to Mother's residence due to Mother's physical, verbal and emotional abuse. On November 1, 2012, the undersigned entered an order consolidating this petition to be heard at the November 7, 2012 short-list conference.[2] On

---

[1] At this time, the parties were operating under a custody order dated December 23, 2009.

[2] On November 7, 2012, the undersigned interviewed the children in chambers and sealed the transcripts through an order dated November 14, 2012. Subsequent orders were entered regarding the sealing and super sealing of these transcripts on November 27, 2012 and December 19, 2012. Father appealed these orders on December 3, 2012, December 21, 2012 and January 11, 2013. The Superior Court quashed these appeals through orders dated January 23, 2013 and February 25, 2013.

1



November 26, 2012, Father filed a "Motion for Recusal of Honorable Kelly C. Wall" which was denied by the undersigned through an order dated December 18, 2012. On December 3, 2012, Mother filed an additional "Emergency Petition" again alleging that Father withheld custody of L█████ by failing to ensure that the minor child followed the custody order. In response, the undersigned entered an interim custody order, dated December 14, 2012, that stated "Mother shall have primary physical custody of the minor child L█████ and Father shall have alternating weekends and Wednesday night dinner visits until further Order of Court." On January 7, 2013, Father filed a "Petition for Continuance of Custody Hearing" (that was scheduled for January 22, 2013) due to his pending appeals. On January 8, 2013, the undersigned entered an order granting Plaintiff's petition and further stating "Plaintiff's petition to modify shall be scheduled after his appeal(s) have been resolved. Parties to relist once appeals have been exhausted."

On July 12, 2013, Father filed a "Second Motion for the Recusal of the Honorable Kelly C. Wall" which was argued before the undersigned and denied both on the record and through an order dated August 8, 2014. The undersigned heard limited testimony on the parties' outstanding custody issues on August 8, 2013. The matter was then rescheduled for February 24, 2014. On February 27, 2014, Father filed another "Emergency Petition" requesting primary physical custody of L█████, in part, because of her chronic lateness to school. On February 28, 2014, the undersigned entered an order consolidating Father's petition with the May 13, 2014 continued custody hearing and ordered both parties to ensure that the minor child is on time for school. The parties appeared for the final custody hearing on July 17, 2014. On August 20, 2014, the undersigned entered a comprehensive "Findings of Fact" and Order granting the parties shared legal custody and Mother primary physical custody subject to Father's partial physical custody. Specifically, during week one, Father shall have custody from Wednesday pick-up after school until Friday morning drop-off at school. During week two, Father shall have custody on Thursday pick-up after school until Monday morning drop-off at school.

## ISSUES

Father filed the instant appeal on September 15, 2014 and raised the following issues in his Concise Statement of Matters Complained of on Appeal filed simultaneously, pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i):

(1) The trial court erred as a matter of law and/or abused its discretion when it entered a final custody order on August 21, 2014 without properly analyzing and/or without properly

2

interpreting all of the custody factors and/or definitions set forth in the Pennsylvania Child Custody Act, 23 Pa.C.S.A. §§5321 to 5338.

(2)    By awarding primary physical custody of the minor child to Mother, the trial court abused its discretion and committed an error of law by entering an order that overrode and misapprehended the law and the court's judgment was manifestly unreasonable given the record evidence.

(3)    The Court erred as a matter of law and/or abused its discretion when it entered a custody order "until further Order of Court", docketed on December 17, 2012 as a result of Mother's unverified emergency petition and a) in an effort to punish Father, b) without any consideration of the best interests, safety or desires of L████, c) without a hearing, d) without regard for due process principles and e) without properly analyzing and/or without properly interpreting all of the custody factors and/or definitions set forth in the Pennsylvania Child Custody Act, 23 Pa.C.S.A. §§5321 to 5338.

(4)    The Court erred as a matter of law and/or abused its discretion when it entered interlocutory orders, "sealing" and "supersealing" the important notes of testimony taken on November 7, 2012 in this custody matter.  These interlocutory court orders effectively secreted important notes of testimony from a) the parties, b) their attorneys, c) the Montgomery County prothonotary and d) from Superior Court review.  The Court's withholding access to the November 7, 2012 notes of testimony prejudiced Father's custody case, impedes a thorough and fair Superior Court review of this custody matter and violates Pa.R.C.P. 1915.11(b).

(5)    The Court erred as a matter of law and/or abused its discretion when it either denied or effectively denied (by failing to rule on) Father's various pretrial motions *in limine* and other documents Father proffered at trial.

(6)    The Court erred as a matter of law and/or abused its discretion when it erroneously excluded Father's relevant evidence citing *inter alia*, attorney/client privilege.  Father's proffered relevant evidence was neither protected under the attorney/client privilege nor excludable for any legitimate reason of record.

(7)    The Court erred as a matter of law and/or abused its discretion when the court denied Father's motion(s) for the judge to recuse.

(8)    The Court erred as a matter of law and/or abused its discretion when it failed to consider Mother's parenting history of A██ N██ who fully emancipated June 11, 2014.

3

(9)     The Court erred as a matter of law and/or abused its discretion when it ordered
L████'s medical records of March 13, 2013 redacted as to the cause of her certified medical
emergency.

## ANALYSIS

Father first argues that this Court erred and abused its discretion in entering a custody
order without properly analyzing and/or interpreting all of the custody factors.  On August 20,
2014, the undersigned entered an eight-page "Findings of Fact" and analysis of the custody
factors, pursuant to 23 Pa.C.S. § 5238.  As Father does not explain how this court "improperly
analyzed" or "improperly interpreted" the custody factors, the court is unable to address this
issue and therefore this claim must fail.

Father next argues that the undersigned's August 20, 2014 custody order that awarded
primary physical custody to Mother was an abuse of discretion and an error of law.  This Court
disagrees.  A review of this Court's August 20, 2014 "Findings of Fact" reveals that we believed
Mother would be more likely to permit frequent and continuing contact between L████ and
Father than Father would between L████ and Mother.  *See*, Findings of Fact, 8/20/04, p. 2.
While Father made allegations of abuse against Mother, there was no evidence to support these
contentions.  *Id.* at 3.  The Court concluded that both parties have the ability to perform the
requisite parental duties for the child.  *Id.*  The child testified to a good quality relationship with
both Mother and Father's family; however, none of these relatives are local.  *Id.* at 4.  The child
testified to her desire to spend more time with Father.  *Id.*  It was this Court's conclusion that
both parties have involved the child in discussions regarding the custody matter.  *Id.*  The Court
also concluded that both parties love the child and can maintain loving and nurturing
relationships with her adequate for her emotional needs.  *Id.* at 5.  Evidence also supported the
conclusion that both parties are likely to attend to the child's daily physical and educational
needs.  *Id.*  The Court was concerned that neither party was attending to the child's emotional
and developmental needs due to their conduct that places the child in the middle of the custody
dispute.  *Id.*  As the Court stated in its "Findings of Fact" conclusion section, "Father's main
argument for primary physical custody was so that the child could improve in school.  However,
it is this Court's opinion that L████ has done very well in school and we do not find that there
needs to be a change in custody on that basis.  The Court does realize that L████ wants to spend
more time with Father and we do believe that Father can provide a loving and nurturing

4

environment for L█████ and he can take care of her needs." Based on the above, we do not believe it was an abuse of discretion or an error of law to increase Father's custody time but allow Mother to retain primary physical custody of the child.

Next, Father argues that the Court erred and abused its discretion when it entered the December 14, 2012 interlocutory custody order in response to Mother's December 3, 2012 emergency petition. Father alleges that this order was entered: (1) in an effort to punish Father; (2) without any consideration of the best interests, safety or desires of L█████; (3) without a hearing; (4) without regard for due process principles; and (5) without properly analyzing and/or without properly interpreting all of the custody factors. This issue was addressed at the August 8, 2013 custody hearing as one of Father's bases to recuse. In response, Mother's counsel stated: "I don't think I need to point out to Your Honor that you entered three orders warning ██████ [Father] to follow the December 21st custody order[3] . . . He was ordered three times to follow that custody order, and he didn't. We already had a hearing on November 7th with respect to the issue of dad providing exclusive residency to L█████ and failing to follow the custody order. So it's not a surprise to me that when I filed a second motion and said: Judge, we're not following the custody order, that a more serious order was entered." N.T., 8/8/13, pp. 37-38.

Father provides no evidence for his claim that the December 14, 2012 custody order was entered to "punish" Father. As a judge in this Commonwealth, the undersigned only has the best interest of the child in mind when creating a custody order. The Court concedes that the December 14, 2012 custody order was entered on an emergency basis (and without a full custody hearing and analysis of the custody factors); however, we cannot agree that the entry of this interim order after the filing of an emergency petition was a violation of Father's due process rights. The parties were scheduled for a custody modification hearing before the undersigned on January 22, 2013; however, Father requested a continuance due to his pending appeals. Consequently, this argument has no merit.

Father next claims that this court erred and abused its discretion when it "sealed" and "super sealed" the notes of testimony of the children's interviews on November 7, 2012. Father's argument rests on a misunderstanding of what "super sealing" means. When the undersigned "super seals" the notes of testimony from a child's interview, the document is still available for appellate review and is located in the Office of the Montgomery County

---

[3] The docket reveals no custody order from December 21st. The order is actually dated December 23, 2009.

5

Prothonotary. However, the document is not filed on the docket because the parties and the attorneys are not permitted to read the notes of testimony.[4] At the August 8, 2013 custody hearing, the Court explained to Father, our reasoning for "super sealing" the notes of testimony from child interviews; specifically, "the rationale is I want children to feel free to express to me opinions and thoughts that they are not comfortable telling their parents. So when I give them an opportunity, and it's on the record, so that that there's no funny business going on, they feel comfortable going back there and telling me how they really feel. And I can tell you that nine out of ten times children open up to me in there and they tell me how they really feel. Children don't want to hurt their parents. They don't want to sit here and look at mom or dad and say: I don't want to be with you, I want to be with her and vice versa. So doing that gives them a little bit of safe harbor, to be honest, to express how they really feel about things." N.T., 8/8/13, pp. 32-33. However, in the custody hearings at issue, the undersigned had the children testify on the record in the court room (on February 24, 2014), and therefore this issue should be moot.

Father next maintains that this court erred and abused its discretion when it either denied or effectively denied (by failing to rule on) Father's "various pretrial motions *in limine* and other documents Father proffered at trial." A review of the docket during the pertinent time period reveals that Father filed seven motions *in limine* over the four-day custody trial. Father failed to point the undersigned to any specific rulings on any particular motions or documents and therefore the Court is unaware of his actual issue. If a Rule 1925(b) statement is too vague, the trial judge may find waiver and disregard the argument. *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. 2006). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001) citing *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa. Super. 2000) citing *Giles v. Douglas*, 747 A.2d 1236, 1237 (Pa. Super. 2000). As Father has failed to identify any specific rulings, we request waiver as to this issue.

Father also claims that this court erred and abused its discretion when it erroneously excluded his "relevant evidence" citing attorney/client privilege. Again, the parties appeared before the undersigned for a lengthy, four-day custody trial as evidenced by the notes of testimony. For example, the August 8, 2013 transcript is 279 pages, the February 24, 2014

---

[4] In this instance, Father actually had counsel present on his behalf, in chambers, at the November 7, 2012 child interview and therefore this issue should be moot.

6

transcript is 223 pages, the May 13, 2014 transcript is 158 pages and the July 17, 2014 transcript is 130 pages. Due to the length of the transcripts and the ambiguity of Father's concise statement, the Court has no idea what "relevant evidence" we allegedly excluded. Due to Father's failure to provide any specifics as to evidence that was excluded, we request waiver as to this issue.

Next, Father alleges that the court erred and abused its discretion in denying his motions to recuse. As stated previously, Father's first motion to recuse was denied through an order dated December 18, 2012. Father's second motion was addressed, and subsequently denied, at the August 8, 2013 custody hearing. Father alleged bias because of the entry of the December 14, 2012 interim custody order, a defect in the scanning system with the Prothonotary that permitted Mother's counsel to see this order before Father did and the undersigned's interviewing the children in chambers. As Mother's counsel noted, Father "has a very skewed view of the proceedings [in that] if we don't rule in this favor, or do exactly what he wants, then you must be biased. He lacks the ability to review information on an impartial basis and make a determination as to whether there's a sound legal basis for the court's rulings . . . [Father] acts like there have been no rulings that have been to his benefit . . . You ruled in his favor with respect to the following of the holiday provisions of the order. You granted him his continuance." N.T., 8/8/13, pp. 37, 39. Additionally, the order at issue extended Father's custody time (and effectively lowered Father's support obligation).

In reviewing the denial of a recusal motion to determine whether the judge abused his discretion, we "recognize that our judges are honorable, fair and competent." *Commonwealth v. King*, 839 A.2d 237, 239 (Pa. 2003) citing *Reilly v. Southeastern Pa. Transp. Auth.*, 489 A.2d 1291, 1300 (Pa. 1985). Based on this premise, where a judge has refused to recuse himself, on appeal, we place the burden on the party requesting recusal to establish that the judge abused his discretion. *King* at 239-240. It is this Court's contention that Father has not met his burden and this claim should be dismissed.

Father next maintains that this court erred and abused its discretion when it failed to consider Mother's parenting history of [A.N.], the parties' emancipated daughter. First, the undersigned allowed copious testimony related to [A.N.] and, in its analysis of the custody factors, cited to [A.N.] in factors four, six, eight, nine and thirteen. The Court specifically stated that "Father then attempted to demonstrate that [A.N.'s] issues were a reflection of Mother's

7

parenting." *See*, 8/20/14, "Findings of Fact," p. 5. In the connected footnote, we stated, "Father spent a great amount of time testifying about **A.N.** ▓▓▓ and while the Court understood his argument (that **A.N.'s** ▓▓▓ issues occurred while the child was residing with Mother and he did not want the same negative things to happen to L▓▓▓▓), the **A.N.** undersigned must point out that not only are **A.N.** ▓▓▓ and L▓▓▓ two different children but ▓▓▓ is eighteen and not subject to this custody order." *Id.* The undersigned does not believe that it was an error of law or an abuse of discretion to make this conclusion; therefore, Father's claim must fail.

Finally, Father argued that this court erred and abused its discretion when it redacted L▓▓▓'s March 11, 2013 medical records. On July 10, 2014, Father filed a "Motion in Limine for a Pretrial Determination of the Admissibility of Certified Medical Records." Father argued that the medical records addressed certain custody factors. Mother filed a response on July 11, 2014. After considering both parties pleadings, the undersigned entered an order, dated July 15, 2014, that required each party to "submit a copy of the medical records with their proposed redaction[s] in compliance with Pa. Rule of Evidence 803(b)(4) and the limitations to the medical treatment exception." As stated on page two of the August 20, 2014 "Findings of Fact," the undersigned redacted these records pursuant to Pennsylvania Rule of Evidence 803(4), which states "[a] statement made for purposes of medical treatment, or medical diagnosis in contemplation of treatment, and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment" is not hearsay. However, the comment section specifically states, "statements as to causation may be admissible, but statements as to fault or identification of the person inflicting harm have been held to be inadmissible." Based on the Pennsylvania Rule of Evidence 803(4) and its comments, we do not believe that it was an error of law to redact certain portions of the medical records that were irrelevant or pertained to fault or the person inflicting harm.

8

## CONCLUSION

For the reasons set forth above, we respectfully request that the Order of August 20, 2014 be affirmed.

BY THE COURT:

KELLY C. WALL, J.

Copies mailed on September 25, 2014 to:
J█████ N███ *pro se*/Plaintiff
Rebecca Bell, Esquire for Defendant
Court Administration

Secretary

9